**UNITED STATES of America, Appellee,**

v.

**Virgil ALESSI, Appellant.**

**No. 961, Docket 76–1044.**

United States Court of Appeals, Second Circuit.

Argued April 26, 1976.

Decided May 26, 1976.

Gary A. Woodfield, Asst. U.S. Atty., Brooklyn, N.Y. (David G. Trager, U.S. Atty., E.D.N.Y., and Paul B. Bergman, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for appellee.

Nancy Rosner, New York City, for appellant.

1. The Strike Force is part of the Organized Crime and Racketeering Section of the Criminal Division of the Department of Justice. Strike Force attorneys are assigned from Washington and operate independently from the United States Attorney for the district.

Before LUMBARD, WATERMAN and FEINBERG, Circuit Judges.

LUMBARD, Circuit Judge:

Virgil Alessi challenges a pre-trial order, entered by Judge Judd in the Eastern District on January 21, 1976, denying his motion to dismiss on alleged double jeopardy and due process grounds the tax evasion indictment now pending against him. On appeal, Alessi has restricted his argument to the contention that his present prosecution for failure to file federal income tax returns for the years 1968 to 1971, inclusive, is barred by the terms of a prior plea bargain pursuant to which he pleaded guilty to narcotics conspiracy as detailed hereafter. The government maintains, and the district court held, that the earlier agreement "did not extend [so] far." We affirm.

On May 1, 1972, a grand jury sitting in the Eastern District returned a superseding indictment charging Alessi, Vincent Papa and numerous others with conspiracy to violate the federal narcotics laws during a period from April 1, 1967 to December 18, 1972. In addition, appellant was accused in Count Five of participation in a continuing criminal enterprise, 21 U.S.C. § 848.

Protracted negotiations then ensued between defense counsel and James Druker, Strike Force Attorney in charge of the case.[1] Apparently, the disappearance of the government's key witness in June 1972 dramatically altered the tenor and direction of these discussions. In any event, on September 5, 1972, Papa entered a plea of guilty to a single count of conspiracy as well as to one count of tax evasion. On October 2, 1972, Alessi, who was represented by the same attorney as Papa,[2] pleaded guilty to an equivalent conspiracy count contained, however, in a newly drawn information. Papa was sentenced to concurrent five year terms of imprisonment; Alessi

2. No claim has been made at any stage of this proceeding that appellant was prejudiced by this joint representation. See *United States v. Mari,* 526 F.2d 117 (2d Cir. 1975).

received a five year suspended sentence with a mandatory three year special parole.

Ever since, there has been doubt as to precisely what Druker promised in exchange for these pleas although the parties here do agree that Alessi was included in the "package deal" offered to Papa and that whatever promises were made to the latter were also extended to appellant. This ambiguity, and the distressing spate of litigation which it has produced, stem from the regrettable fact that the Strike Force, at that time, had no general practice of reducing to writing the terms of a plea arrangement. The record reveals that in the intervening years Papa has been indicted twice more and Alessi three times more and both have raised the 1972 agreement as a defense to each indictment. As detailed in the margin, this strategy has produced mixed results.[3] In the instant case, Judge Judd rejected in a memorandum decision what he considered to be Alessi's expansive interpretation of the 1972 plea bargaining. This appeal followed.

■ The government urges at the outset that Judge Judd's order is interlocutory and thus non-appealable under the well-settled doctrine limiting review to final orders, see 28 U.S.C. § 1291. We disagree. While it is of course true, in most instances, that a district judge's refusal to dismiss an indictment is reviewable only if and when a judgment of conviction is entered against the defendant, *United States v. Garber,* 413 F.2d 284, 285 (2d Cir. 1969), this court has carved an exception to that general rule when the motion to dismiss is based upon a claim of double jeopardy. *United States v. Beckerman,* 516 F.2d 905 (2d Cir. 1975).

■ The purpose of the Double Jeopardy Clause of the Fifth Amendment is to insure that no individual will twice be held to answer for the same charge. See *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct.

547, 27 L.Ed.2d 543 (1971) (plurality opinion of Harlan, J.). "[It's] prohibition is not against being twice punished, but against being twice put in jeopardy," *United States v. Ball,* 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 41 L.Ed. 300 (1896). A defendant who is required to await the completion of allegedly duplicative proceedings against him before being allowed to vindicate his double jeopardy rights, has already and irreparably lost to a large degree the protection which the right was meant to afford him. It is in just such instances that the Supreme Court has recognized the propriety of interlocutory review. *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

Although the present appeal is based on due process grounds—i. e., that the government has failed to fulfill an earlier promise not to prosecute—it is apparent that similar interests are at stake. We implicitly held so much when, in January of this year, we issued a writ of mandamus directing that Alessi's identical contention, raised in the context of another criminal case in which he was involved, be resolved before trial was commenced. *United States v. Alessi,* Dkt. No. 76–1021 (2d Cir. Jan. 20, 1976).

The government argues that *Beckerman* should be restricted to those situations where the defendant has already undergone the trauma of a first trial and should be inapplicable where, as here, Alessi pleaded guilty to the earlier indictment. Even were we to accept the debatable proposition that there is less stress involved in pleading guilty than in standing trial, we fail to see how the distinction bears any relevance to the purposes of the Double Jeopardy Clause, as outlined above.

■ More particularly, the government is estopped from placing its reliance upon the fact that Alessi pleaded guilty in 1972.

---

3. On September 16, 1975, both Alessi and Papa were indicted in the Eastern District for narcotics conspiracy. Papa's indictment was dismissed by Judge Judd; Alessi's was upheld but eventually *nol prossed.* Papa fared less well, however, in the Southern District where his indictment for violation of the narcotics laws was just recently sustained by this court. *United States v. Papa,* 533 F.2d 815 (2d Cir. 1976). Alessi's appeal from an adverse decision of Judge Bonsal, refusing to dismiss his indictment in the Southern District for narcotics offenses, is currently scheduled to be ready for argument at the end of June 1976.

The defendant's consent to waive his constitutional right to trial by jury is precisely the consideration which the prosecution demands in exchange for any plea bargain. Having negotiated for this result, the government may not now present it as a justification for denying Alessi the timely relief which he requests. If, in fact, the government represented to appellant that he would not later be indicted for the crimes for which they now seek to try him, he is entitled at this point to specific enforcement of that agreement. See *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). We note, moreover, that only the extent and not the existence of the 1972 agreement is here in question. Under the circumstances thus presented, we hold that the district court's order is appealable.

■ On the merits, however, we agree with Judge Judd that the present prosecution for tax evasion is not barred by the 1972 plea bargain. In *United States v. Papa,* 533 F.2d 815 at 824 (2d Cir. 1976), we recently had occasion to consider the terms of that agreement and noted specifically that Strike Force Attorney Druker had not granted Papa, nor, by extension, Alessi, " 'carte blanche' immunity as to all . . past criminal conduct." Rather, Papa and Alessi were guaranteed only that they would not be reindicted for the "[narcotics] conspiracy or any overt act contained in that conspiracy." As alternatively phrased, they were promised that they would not subsequently be prosecuted for "another piece of the same conspiracy."[4]

That promise has not been breached here. Although tax evasion may often be practiced by those who violate the narcotics laws, it is neither an element nor an inevitable consequence of a narcotics conspiracy. Moreover, the evidence necessary to sustain a conviction for narcotics conspiracy is plainly not "the same" as that required to prove tax evasion. Cf. *United States v. Mallah,* 503 F.2d 971 (2d Cir. 1974), cert. denied, 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975). Indeed, the only credible relationship that can be established between the two offenses is that a significant percentage of the income which Alessi is now accused of failing to report in 1968, 1969, 1970, and 1971, was probably generated by his illegal narcotics operation. This connection is not enough to require dismissal of the instant indictment. One could as easily claim that any crime whose proceeds were used to purchase narcotics during those years was subsumed within and immunized by the 1972 plea. Yet, throughout the negotiations, Druker repeatedly emphasized that crimes such as hijacking—i. e., non-narcotics activities—were not covered by the agreement.

Judge Judd was clearly correct in holding that tax evasion simply cannot in any reasonable manner be construed to be a "piece of" the narcotics conspiracy to which Alessi pleaded guilty on October 2, 1972. That Papa pleaded guilty to tax evasion as a result of the discussions with Druker in 1972 does not, as appellant suggests, refute this contention or impliedly expand the scope of the agreement. It points merely to the desire of everyone involved to close the Papa file, as it then stood. Papa's tax plea appears to have been ancillary to the discussions concerning his narcotics affairs, the latter being the only negotiations which affected Alessi.[5]

4. These words are Druker's own, as testified to during an evidentiary hearing conducted by Judge Brieant of the Southern District in connection with proceedings in *United States v. Papa,* supra.

5. Druker revealed the pending tax investigation by the Internal Revenue Service to Papa's attorney after learning of it in June 1972 to correct his earlier assertion that the narcotics conspiracy was the only case against Papa in the Eastern District of which he was aware. Druker testified that he felt an "ethical obligation" to clarify the record. The disclosure did not result from any feeling on his part that tax evasion represented a "piece of," or an overt act in furtherance of, the narcotics conspiracy.

This sequence of events is illuminating in another regard. Following his revelation and just prior to reaching an agreement with Papa, Druker reavowed that there were then no other investigations into Papa's affairs in the Eastern District. Alessi contends that this statement, which claimed our attention in *United States v.*

Appellant's attempt to demonstrate a nexus between the current claim of tax evasion and his 1972 indictment for participation in a continuing criminal enterprise is equally unpersuasive. Alessi is correct that, had he not agreed to a bargain in 1972, the government would have had to prove as part of its case under 21 U.S.C. § 848 that he derived substantial income from his narcotics activities. The prosecution would not, however, have been required to establish that he failed to report his income. That allegation, the gravamen of the present indictment, did not constitute a "piece of" any crime with which Alessi was previously charged. Nor has he yet been placed in "jeopardy" with respect to it. There was thus no error in the district court's denial of Alessi's motion to dismiss the indictment for tax evasion.

Affirmed.

*Papa, supra,* requires that we remand to the district court for a determination of whether, at the time of Alessi's plea in 1972, there was already underway in the Eastern District an investigation into his alleged tax violations. We disagree.

Our review of the record convinces us that Druker's comment was intended as a representation of fact directed to Papa alone. Certainly, Papa had a right to rely upon that represen-

tation. But it was not meant to be a promise to Alessi as well.

Nor do we deem this conclusion inconsistent with the district court's finding that Alessi's plea "was made in reliance on the same discussions" which produced an agreement with Papa. From the context in which the word "discussions" is used, we believe it clear that Judge Judd's reference was limited to whatever promises were made by the government.