UNITED STATES of America,
Plaintiff–Appellee,

v.

Kenneth M. COMEAUX, Edmund M. Reggie, Oscar W. Boswell, II, Defendants–Appellants.

No. 91–4194.

United States Court of Appeals,
Fifth Circuit.

Feb. 7, 1992.

Rehearing Denied March 5, 1992.

C. Michael Hill, Juneau, Judice, Hill & Adley, Lafayette, La., for defendant-appellant Comeaux.

William H. Jeffress, Jr., D. Bradley Clements, Miller, Cassidy, Larroca & Lewin, Washington, D.C., Camille F. Gravel, Jr., Gravel, Brady & Berrigan, Alexander, La., for defendant-appellant Reggie.

James E. Boren, Baton Rouge, La., for defendant-appellant Boswell.

Josette L. Cassiere, Asst. U.S. Atty., Joseph S. Cage, Jr., U.S. Atty., Shreveport, La., for plaintiff-appellee.

Before THORNBERRY, GARWOOD, and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Defendants-appellants Edmund M. Reggie (Reggie), Oscar W. Boswell (Boswell), and Kenneth M. Comeaux (Comeaux) appeal the denial of their motion to dismiss an indictment against them for bank fraud. Contending that the government's dismissal of another, earlier indictment against them a year previously was in bad faith, they argue that the prior dismissal should be recharacterized as with prejudice, barring the present prosecution. We conclude that we lack jurisdiction, and dismiss the appeal.

### Facts and Proceedings Below

On May 24, 1989, a federal grand jury in the Western District of Louisiana returned an eleven-count indictment charging Reggie, Boswell, and Comeaux with defrauding

and conspiring to defraud two federally insured depository institutions, Acadia Savings & Loan (Acadia) and Louisiana Bank and Trust Company (Louisiana Bank). The indictment covered the period from January 1, 1985 to June 1, 1987, during which time Reggie was the chairman of Louisiana Bank and former chairman of Acadia, Comeaux was the president and a member of the board of directors of Acadia, and Boswell was a law partner of Reggie's and general counsel for Acadia and Louisiana Bank. The charges were based on three loans and two loan applications in June and July of 1985. The indictment alleged that the three defendants had diverted large sums of Acadia's and Louisiana Bank's funds to their personal use by procuring and attempting to procure these loans for certain unindicted coconspirators through inflated appraisals of collateral and other misrepresentations. Six of the counts named all three defendants, four named Reggie alone, and one named Reggie and Boswell.

The defendants-appellants were scheduled to be tried on September 12, 1989. On August 9, 1989, as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Congress extended the statute of limitations for fraud and other criminal offenses affecting banking institutions from five to ten years. *See* 18 U.S.C. § 3293. On August 29, 1989, the government filed a motion to dismiss the indictment without prejudice. The motion stated that during trial preparation the government had "formed the opinion that the foregoing enumerated transactions are a small part of a larger plan, scheme and design to defraud Acadia Savings & Loan, extending from 1983 to 1987, involving numerous other transactions ... and involving the same defendants herein indicted, and possibly others." Averring that the alternative to dismissal was successive prosecutions that would thwart judicial economy and raise troublesome double jeopardy issues, the government requested

dismissal so that it could seek a more comprehensive indictment.

Reggie opposed the government's motion, arguing that it was merely an effort to gain a tactical advantage over the defendants, and that the government's justifications were not given in good faith. More specifically, he noted that the United States Attorney's office had been monitoring and investigating his activities since 1982, and the government's claim to have recently discovered evidence was therefore dubious. He suggested that the government's real motivations were to postpone a trial for which it was unprepared, to add further charges in the hope that the sheer weight and complexity of the allegations would bolster its case, and to advance the FSLIC's interests in a pending civil suit by pursuing an indictment that more closely tracked the civil complaint. He argued that the "leave of court" required for dismissal under Federal Rule of Criminal Procedure 48(a) should therefore be withheld. Comeaux and Boswell joined in Reggie's opposition to the government's dismissal motion. In response to the defendants' opposition, the U.S. Attorney and Assistant U.S. Attorney filed a joint affidavit stating that in the past two-and-a-half weeks, certain witnesses and documents had come to their attention for the first time. This evidence, they stated, "strongly indicates the existence of a larger conspiracy."

Judging the motions according to our decision in *United States v. Welborn*, 849 F.2d 980 (5th Cir.1988) (per curiam), the district court found that the government had offered somewhat more than a bare conclusion (in *Welborn*, that a dismissal would "serve the ends of justice"), and granted the government's motion.

On September 14, 1990, the grand jury returned a new indictment. The second indictment added three new loan transactions involving Reggie and two new defendants, but dropped the conspiracy count altogether.[1] Reggie, Comeaux, and Boswell moved to dismiss the new indictment

---

1. A superseding indictment was later returned on November 29, 1990, adding an additional transaction and a sixth defendant.

on principles of double jeopardy and estoppel, arguing that under *Welborn* the dismissal of the first indictment should be recharacterized as with prejudice.[2] Reggie alleged that the added transactions were unrelated to the ones charged in the first indictment and thus did not corroborate the government's earlier explanation that it possessed new evidence showing a larger conspiracy. He further alleged that the added transactions were known to the government well prior to August 1989, and were a subject of the FSLIC's 1988 civil suit. Reggie expressly requested an evidentiary hearing, which was granted by the magistrate and scheduled for December 18, 1990.

The defendants served subpoenas on three prosecutors, an FBI agent, and an FSLIC attorney. Shortly prior to the scheduled evidentiary hearing, the government moved to quash the subpoenas, again submitting a joint affidavit from its two prosecutors. This affidavit was more specific: it stated that they had learned for the first time in August 1989 that an individual named Ivy Randolph Creel (Creel) had been convicted in the Middle District of Louisiana and was cooperating with federal authorities there. Creel was assisting the authorities in investigating the roles of several institutions in some of the transactions that were ultimately added in the second indictment against Reggie, Comeaux, and Boswell. They also stated that they received several documents between August 15 and August 28, 1989 that indicated a continuing relationship between Reggie, Creel, and Thomas Keene (Keene)—who was added as a defendant in the second indictment—including payments by the latter two to Reggie in exchange for loans from Acadia. The government also submitted an affidavit from the Assistant U.S. Attorney from the Middle District of Louisiana confirming that the Western District

prosecutors had first contacted him in August 1989, and had indicated to him that the information obtained from Creel influenced their decision to seek dismissal of the first indictment.

On December 18, 1990, at the scheduled hearing, the magistrate held that the government had given more than a conclusory reason when it had initially sought the dismissal, so under *Welborn* the defendants were not entitled to a hearing to further examine those reasons. *See Welborn*, 849 F.2d at 984. The magistrate held in the alternative that the recent affidavits from the prosecutors adequately fleshed out the reasons given in August 1989. The magistrate recommended that the government's motion to quash the subpoenas be granted, and that the defendants' motion for dismissal be denied.

On February 26, 1991, the district court adopted the magistrate's recommendation, although it did not adopt the magistrate's reasoning that under *Welborn* if the initial explanation given for seeking dismissal is not merely conclusory, no subsequent inquiry into the government's reasons is permitted. The district court held instead that the government's presumption of good faith had not been overcome by an "affirmative reason" to believe that the prosecutors were motivated by considerations contrary to the public interest. *See id.* All three defendants seek relief from the district court's order, either through a reversal on the merits or through a writ of mandamus.

### Discussion

The threshold question is whether under these circumstances this Court may entertain an appeal from the denial of a motion to dismiss an indictment. 28 U.S.C. § 1291 limits this Court's jurisdiction to appeals from "final decisions" of the district

2. Reggie argued that Counts II through VI of the new indictment, which were based on the same transactions as the May 1989 indictment, should be dismissed on the grounds of double jeopardy and estoppel. The other counts, he argued, should be dismissed because they were the product of the invalid dismissal and of prejudicial preindictment delay. Boswell, who was not named in any of the new counts of the September 1990 indictment, sought dismissal of the entire indictment as to him, arguing that proceeding to trial on the second indictment would constitute double jeopardy, a violation of due process, and a violation of his Sixth Amendment right to a speedy trial.

courts. Defendants-appellants contend that the district court's decision in this case, though plainly not "final" in the sense of terminating the proceedings in the district court, falls within the category of decisions that may be treated as final for purposes of section 1291 under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

The Supreme Court has held that the denial of a motion to dismiss an indictment on grounds of double jeopardy is immediately appealable under the collateral order doctrine. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 2040–42, 52 L.Ed.2d 651 (1977). The gist of the defendants-appellants' argument is that their situation, although not technically one of double jeopardy[3] or of the variety of double jeopardy called collateral estoppel,[4] sufficiently implicates the same concerns to warrant application of the collateral order doctrine.

█ The Supreme Court has identified three conditions that a decision must meet to fall within the *Cohen* doctrine: (1) the district court's decision should conclusively determine the disputed question and not leave it unresolved in any manner; (2) the decision should not be a step toward final disposition of the merits of the case, but should be completely collateral; and (3) the decision should involve an important right that will be irretrievably lost if an immediate appeal is not allowed. *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 109 S.Ct. 1976, 1978, 104 L.Ed.2d 548 (1989); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978); *Abney*, 97 S.Ct. at 2039.

█ The Court has also indicated, though, that the policy of efficient administration of justice embodied in the final judgment rule of section 1291, which minimizes appellate-court interference with trial courts' prejudgment decisions and prevents parties from clogging the courts with piecemeal litigation and multiple appeals, "is at its strongest in the field of criminal law." *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 102 S.Ct. 3081, 3082, 73 L.Ed.2d 754 (1982) (per curiam). Accordingly, the collateral order exception has been interpreted " 'with the utmost strictness' " in criminal cases. *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 109 S.Ct. 1494, 1498, 103 L.Ed.2d 879 (1989) (quoting *Flanagan v. United States*, 465 U.S. 259, 104 S.Ct. 1051, 1055, 79 L.Ed.2d 288 (1984)).

█ This commitment to the rule of finality in criminal cases has been effectuated largely through a stringent application of the third *Cohen* requirement—that the right at stake be one which cannot be vindicated on an appeal from a final judgment. The *Abney* Court found that requirement to be satisfied because the protection offered by the Double Jeopardy Clause is against being twice *put* in jeopardy, *i.e.*, against being forced to stand trial, and endure the attendant strain and public exposure, more than once for the same offense. *Abney*, 97 S.Ct. at 2041. A second trial itself offends this right, even if it ends in acquittal or in a conviction that is reversed on appeal.

The defendants-appellants argue that Rule 48(a) embodies a similar right because the proper remedy for a Rule 48(a) viola-

---

**3.** Generally, jeopardy attaches when a jury is empaneled and sworn. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977); *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). The defendants-appellants therefore have no claim that they have twice been placed in jeopardy in violation of the Fifth Amendment; their original prosecution was dismissed two weeks prior to trial.

**4.** When a practical examination of a prior verdict of acquittal reveals that a jury has determined an issue of ultimate fact in favor of a defendant, the principle of collateral estoppel— grounded in the Fifth Amendment guarantee against double jeopardy—forbids relitigation of that issue in a subsequent prosecution of the defendant. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 1194–95, 25 L.Ed.2d 469 (1970). We have held that a denial of a motion to dismiss an indictment on such collateral estoppel grounds is appealable under the *Cohen* doctrine. *United States v. Leach*, 632 F.2d 1337, 1338 n. 1 (5th Cir. Unit A 1980). Again, though, the defendant-appellants cannot avail themselves of this rule; no jury has yet considered their case or decided any issue in their favor.

tion is recharacterization of the first dismissal as with prejudice, *Welborn*, 849 F.2d at 984, and because a dismissal with prejudice operates exactly as an acquittal. Thus, they argue, even forcing them to stand trial raises the equivalent of a double jeopardy concern. Their primary support for this argument is *United States v. Castiglione*, 876 F.2d 73 (9th Cir.1988), *cert. denied*, 493 U.S. 954, 110 S.Ct. 365, 107 L.Ed.2d 351 (1989). In *Castiglione*, as in this case, the government sought dismissal of an indictment without prejudice so that it could obtain a more comprehensive indictment in its place. However, in *Castiglione* the district court denied the request to dismiss the indictment until the grand jury returned a superseding indictment, at which point the district court dismissed the first indictment *with prejudice*. *Id.* at 75. Castiglione then moved to dismiss the counts of the superseding indictment that duplicated counts in the original indictment, arguing that the dismissal with prejudice operated as an adjudication on the merits and barred further prosecution of those counts. The Ninth Circuit, though it ultimately rejected this argument, held that it had jurisdiction to hear Castiglione's appeal from the denial of this motion, because he had raised a colorable claim of a right not to be tried on those counts. *Id.*

*Castiglione* is not controlling because in that case the first dismissal was with prejudice. The Ninth Circuit exercised jurisdiction only to determine whether the dismissal with prejudice represented "a resolution in favor of the defendant on some or all of the factual elements of the offense charged," *id.* at 76, the test for double jeopardy or collateral estoppel. Concluding that it plainly did not, the court gave no indication that it would also have jurisdiction to assess the government's good faith in seeking dismissal. In this case, by contrast, there is no dismissal with prejudice that could even theoretically represent a resolution in defendants-appellants' favor. The injury from which defendants-appellants are seeking preventive relief is not relitigation of issues previously decided in their favor, but unfair tactical maneuvering by the prosecutor's office that creates prej-

udicial delay. The fact that the remedy provided by *Welborn* is recharacterization of the prior dismissal as with prejudice does not convert the injury itself into the one addressed in *Castiglione* and *Abney*.

The Supreme Court has made this clear in its cases addressing claims more similar to the ones here, *i.e.*, allegations of harassment by the prosecution and unreasonable delay in going to trial. In *United States v. MacDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978), the defendant contended that his indictment should have been dismissed because he had been denied his Sixth Amendment right to a speedy trial. The Court concluded that the denial of his motion for dismissal was not immediately appealable under *Cohen*, in part because the Sixth Amendment did not, like the Double Jeopardy Clause, embody a "right not to be tried." *Id.* 98 S.Ct. at 1552–53. The Court noted that the fact that the appropriate remedy would be dismissal of the indictment did not mean the defendant enjoyed a right that substantively could only be safeguarded through interlocutory appeal. *Id.* at 1552 n. 7. Likewise, claims that an indictment should be dismissed because of prosecutorial misconduct or bad faith have been deemed effectively reviewable on appeal of a final judgment and thus outside the *Cohen* exception. *See, e.g.,* *Hollywood Motor Car Co.*, 102 S.Ct. at 3085 (defendant claimed that the decision to seek dismissal of an original indictment and secure a superseding indictment manifested prosecutorial vindictiveness); *Midland Asphalt Corp.*, 109 S.Ct. at 1498 (defendant alleged a violation of Federal Rule of Criminal Procedure 6(e), prohibiting public disclosure of matters occurring before the grand jury). Indeed, in only one instance other than *Abney* has the Court indicated that an immediate appeal of a denial of a motion to dismiss an indictment would be available: a prosecution alleged to contravene the Speech or Debate Clause of Article I, which like the Double Jeopardy Clause contains an explicit textual guarantee against being forced to stand trial (Senators and Representatives "shall not be questioned in any other Place" about

speech on the floor of Congress). *Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 2448–49, 61 L.Ed.2d 30 (1979).

That a defendant's interest in avoiding tactical dismissals by the government is vindicable on appeal from a final judgment is also strongly suggested by the Supreme Court's decision in *Parr v. United States*, 351 U.S. 513, 76 S.Ct. 912, 100 L.Ed. 1377 (1956). In *Parr*, after the defendant obtained a transfer of his case from Corpus Christi to Laredo, the government procured a second indictment for the same offense in Austin and obtained dismissal of the first indictment over Parr's objection. The Supreme Court held that *Cohen* did not entitle Parr to appellate review of the dismissal of the first indictment prior to standing trial in Austin. *Id.* 76 S.Ct. at 916. To the extent that defendants-appellants' argument in this case is that the district court erred in September 1989 by not refusing any dismissal or by not dismissing with prejudice, *Parr* indicates that appeal of a final judgment entered after reindictment is the only remedy.[5]

Defendants-appellants also rely on *United States v. Alessi*, 536 F.2d 978 (2d Cir. 1976), in which the Second Circuit permitted an appeal under the collateral order doctrine of a defendant's claim that an indictment for tax evasion violated the government's promise not to prosecute those charges in his previous plea bargain on narcotics charges. The Second Circuit noted that although it was not technically a double jeopardy case, "similar interests [were] at stake." *Id.* at 980. However, the approach followed by the *Alessi* court, which two courts of appeals had already declined to follow,[6] was called further into doubt by the Supreme Court's statement in *Midland Asphalt* that "[a] right not to be tried in the sense relevant to the *Cohen* exception rests upon an explicit statutory or constitutional guarantee that trial will not occur." *Midland Asphalt*, 109 S.Ct. at 1499. Moreover, for the reasons previous-

ly stated, we do not believe that the defendants-appellants' interests at stake here are similar to the interests protected by the Double Jeopardy Clause.

Therefore, we conclude that we have no jurisdiction under the *Cohen* collateral order doctrine to review the district court's decision.

■ Defendants-appellants ask that if we decide that jurisdiction is lacking, we treat their appeal as a request for a supervisory writ of mandamus, and direct that the district court grant them an evidentiary hearing. *See Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 238–39, 13 L.Ed.2d 152 (1964); *In re E.E.O.C.*, 709 F.2d 392, 394–95 (5th Cir.1983). Supervisory control of the district courts through mandamus is appropriate when there has been a "clear abuse of discretion," a "usurpation of judicial power," or an "abdication of the judicial function." *Schlagenhauf*, 85 S.Ct. at 238; *La Buy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 313, 1 L.Ed.2d 290 (1957). It is not appropriate when "the most that could be claimed is that the district courts have erred in ruling on matters within their jurisdiction." *Parr*, 76 S.Ct. at 917. Such use of the writ would "thwart the congressional policy against piecemeal appeals," *id.*, which, again, carries added force in criminal cases. *See Flanagan*, 104 S.Ct. at 1054–55.

■ We do not find this to be an appropriate case for the extraordinary remedy of mandamus. The district court's refusal to grant an evidentiary hearing was the type of discretionary decision for which mandamus is generally not used. *Cf. Schlagenhauf*, 85 S.Ct. at 239 (mandamus is typically inappropriate for "good cause" determinations). As the disagreement between the magistrate and the district judge shows, defendants-appellants' right to a hearing is unclear under *Welborn*, so there was no "clear abuse of discretion."

---

5. The *Welborn* Court assumed the same result. *Welborn*, 849 F.2d at 984 n. 3.

6. *See John Doe Corp. v. United States*, 714 F.2d 604, 606 (6th Cir.1983) (per curiam); *United States v. Eggert*, 624 F.2d 973, 975 (10th Cir.

1980) (per curiam). In addition, the *Alessi* outcome would be difficult to reconcile with our holding in *United States v. Bird*, 709 F.2d 388 (5th Cir.1983).

**262**

## Conclusion

Because we conclude that we lack jurisdiction to review the district court's order and that a writ of mandamus is not an appropriate remedy here, the appeal is dismissed and the application for a writ of mandamus is denied.

Appeal DISMISSED; Mandamus DENIED.