

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-15-1996

# United States v. McQuilkin

Precedential or Non-Precedential:

Docket 95-2092

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"United States v. McQuilkin" (1996). *1996 Decisions.* Paper 46.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/46

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 95-2092
_____


UNITED STATES OF AMERICA

v.

ROBERT McQUILKIN

Robert McQuilken,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 94-cr-00356-1)
_____


Argued June 11, 1996

Before:  SCIRICA and ROTH, Circuit Judges
and RESTANI, Judge, Court of International Trade*

(Filed October 15, 1996)


ROBERT J. DONATONI, ESQUIRE (ARGUED)
Goldberg, Evans, Malcolm,
  Donatoni & Rohlfs
135-137 West Market Street
West Chester, Pennsylvania 19382

Attorney for Appellant


EMILY McKILLIP, ESQUIRE (ARGUED)
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106

Attorney for Appellee


*The Honorable Jane A. Restani, Judge, United States Court of
International Trade, sitting by designation.

———————————
OPINION OF THE COURT
———————————

SCIRICA, Circuit Judge.

In this appeal Robert McQuilkin challenges his sentence. We will affirm.

I.

Between March 1994 and July 1994, Robert McQuilkin sold methamphetamine. All sales took place within 1,000 feet of St. Francis Xavier, a parochial elementary school in Philadelphia.

A jury found McQuilkin guilty of conspiracy to distribute methamphetamine (21 U.S.C. § 846); distribution of methamphetamine (21 U.S.C. § 841(a)); distribution of methamphetamine within 1,000 feet of a school (21 U.S.C. § 860); and use of a communication facility in furtherance of a drug trafficking crime (21 U.S.C. § 843(b)).

The district court determined that McQuilkin was a "career offender" under U.S.S.G. § 4B1.1, which raised his criminal history from Category III to Category IV and his offense level to thirty-seven. The applicable guideline range was 360 months to life. The district court sentenced McQuilkin to 360 months imprisonment on §§ 846, 841(a) and 860 and 48 months on § 843(b), to run concurrently.

On appeal, McQuilkin contends he did not qualify as a "career offender." Alternatively, he argues a downward departure was warranted because the "career offender" designation overstated his criminal history and he suffered from a "severe medical impairment."

II.

A.

To qualify as a "career offender" under § 4B1.1 of the Sentencing Guidelines, a defendant must have at least two prior felony convictions of either "crimes of violence" or controlled substance offenses. McQuilkin does not challenge the propriety of counting his 1987 drug trafficking conviction as a predicate offense. What is in dispute is whether McQuilkin's 1988 conviction for aggravated assault is a "crime of violence," and thereby constitutes the second predicate offense required for "career offender" status. While under the influence of alcohol and drugs, McQuilkin crashed a motorcycle, severely injuring himself and his passenger. As a result, he was convicted of aggravated assault (18 Pa. Cons. Stat. Ann. § 2702 (1995)) for injuring his passenger. The district court considered the aggravated assault conviction a "crime of violence" and counted it as the second predicate offense. But McQuilkin contends that "mere recklessness" should not constitute a "crime of violence" under § 4B1.1.

"Crime of violence" is defined in § 4B1.2 of the guidelines:

The term `crime of violence' means any offense under federal or state law punishable by imprisonment for a

        term exceeding one year that --
                (i) has as an element the use, attempted use,
                or threatened use of physical force against
                the person of another, or
                (ii) is burglary of a dwelling, arson, or
                extortion, involves use of explosives, or
                otherwise involves conduct that presents a
                serious risk of physical injury to another

U.S.S.G., § 4B1.2.  Application Note 2 to § 4B1.2 states that the
term "`[c]rime of violence' includes . . . aggravated assault."
The government maintains Application Note 2 definitively
establishes that McQuilkin's conviction for aggravated assault
qualifies as a "crime of violence" under § 4B1.2, and a predicate
offense under the "career offender" provision.
        McQuilkin contends the conduct underlying his conviction
was not the type contemplated by Congress when it enacted 28 U.S.C.
§ 994, or by the Sentencing Commission when it promulgated Section
4B1.2.  He asserts his conviction for aggravated assault from the
motorcycle accident was based on a finding of "mere recklessness,"
and notwithstanding Application Note 2's reference to "aggravated
assaults" as a class or generic category, should not qualify as a
"crime of violence."
        To support his argument, McQuilkin invokes the last
sentence of Application Note 2's first paragraph which provides:
"[u]nder this section, the conduct of which the defendant was
convicted is the focus of the inquiry."  U.S.S.G., § 4B1.2,
comment. (n.2).  This sentence was added to Application Note 2 as
Amendment 433 to the Sentencing Guidelines, and became effective
November 1, 1991.  Amendment 433, U.S.S.G. App. C, at 312 (1995).
McQuilkin maintains this directive requires a court to look beyond
the offense categories listed in the Application Note and evaluate
the underlying conduct to determine whether the defendant committed
a "crime of violence."
                                B.
        Construction of the guidelines is subject to plenary
review, while factual determinations underlying guideline
application are reviewed under a clearly erroneous standard.  SeeUnited
States v. Sokolow, 91 F.3d 396, 411 (3d Cir. 1996).  The
proper construction of the term "crime of violence" is a question
of law, and our review is plenary.  United States v. Parson, 955
F.2d 858, 863 (3d Cir. 1992).
        As we have previously noted, the relevant Pennsylvania
statute defines aggravated assault as one who "attempts to cause
serious bodily injury to another, or causes such injury
intentionally, knowingly or recklessly under circumstances
manifesting extreme indifference to the value of human life . . .
." 18 Pa. Cons. Stat. Ann. § 2702 (1995).  McQuilkin contends his
aggravated assault conviction was predicated upon a determination
that his conduct was reckless.  The government has not contradicted
McQuilkin's characterization of his offense.  Although the record
of the aggravated assault conviction is inconclusive, it does
appear that McQuilkin's conviction was based on a finding of
recklessness.

Our jurisprudence, however, does not permit us to examine the actual conduct underlying the offense, notwithstanding the Sentencing Commission's instruction that "the conduct of which the defendant was convicted is the focus of the inquiry." U.S.S.G. § 4B1.2, Comment. (n.2). To demonstrate why this is so, we will undertake a brief review of our case law and Amendment 433.

Before Amendment 433 was adopted, we held that when considering crimes specifically enumerated in the guidelines or application notes, the sentencing judge may not consider the underlying conduct. See Parson, 955 F.2d at 872; United States v. John, 936 F.2d 764, 767-78 (3d Cir. 1991); United States v. McAllister, 927 F.2d 136, 139 (3d Cir.), cert. denied, 502 U.S. 833 (1991). As for crimes not specifically enumerated, the Courts of Appeals disagreed over whether the "crime of violence" designation turned on the facts of the underlying behavior, or on the statutory definition of the offense. Compare John, 936 F.2d at 768 (courts may look to defendant's actual conduct); United States v. Goodman, 914 F.2d 696, 699 (5th Cir. 1990) ("When the instant offense is not one of those enumerated, . . . [the] court is permitted to look beyond the face of the indictment and consider all facts disclosed by the record"); United States v. Alvarez, 914 F.2d 915, 918 (7th Cir. 1990) (the court must look to the specific conduct of the defendant as well as the elements of the offense charged), cert. denied, 500 U.S. 934 (1991); with United States v. Gonzalez-Lopez, 911 F.2d 542, 547 (11th Cir. 1990) (a court may only review the statutory definition of the crime or the generic category of the offense, and not the defendant's actual conduct), cert. denied, 500 U.S. 933 (1991); United States v. Becker, 919 F.2d 568, 570 (9th Cir. 1990) (courts may only look to statutory definition of offense), cert. denied, 499 U.S. 911 (1991).

Through Amendment 433, the Sentencing Commission sought to clarify the "crime of violence" designation to include only the "conduct of which the defendant was convicted." Sentencing judges were directed not to examine the actual underlying behavior when conducting the "career offender" analysis. Amendment 433, U.S.S.G. App. C, at 312 (1995); Joshua, 976 F.2d at 856 ("[A] sentencing court should look solely to the conduct alleged in the count of the indictment charging the offense of conviction in order to determine whether the offense is a crime of violence . . ."); United States v. Fitzhugh, 954 F.2d 253, 255 (5th Cir. 1992) ("[t]he sentencing court should consider conduct expressly charged in the count of which the defendant was convicted, but not any other conduct that might be associated with the offense").

Nevertheless, this clarification is inconsequential to our analysis for specifically enumerated crimes. In a recent decision, which post-dates the adoption of Amendment 433, we held that no inquiry into the facts of the predicate offense is permitted when a predicate conviction is enumerated as a "crime of violence" in Application Note 2 to § 4B1.2. United States v. McClenton, 53 F.3d 584 (3d Cir.), cert. denied, ___ U.S. ___, 116 S.Ct. 330, 133 L.Ed.2d 230 (1995). The fact of conviction remains dispositive for such crimes.

In McClenton we were asked to decide whether a hotel guest room constituted a "dwelling," thereby making burglary of a

hotel room a "crime of violence" under § 4B1.2. The hotel room was unoccupied at the time of the burglary and the defendant argued that his crime was against property, not habitation, and therefore should not be considered a "crime of violence." We found otherwise, concluding the guidelines did not support a distinction between inhabited and uninhabited dwellings. In explaining our decision we wrote, "the only issue we must decide is whether the prior convictions for burglary involved a dwelling. Because burglary of a dwelling is specifically enumerated in the Guidelines, no further inquiry is warranted." McClenton, 53 F.3d at 588.

Because the Sentencing Commission has adopted a categorical approach to the determination of whether an underlying offense is a "crime of violence," we reaffirmed in McClenton our earlier judgment that "where the predicate offense is expressly listed as a crime of violence, a more detailed inquiry into the underlying facts is inappropriate". McClenton, 53 F.3d at 588.

Arguably, one can read the Commission's instruction that the "conduct of which the defendant was convicted is the focus of inquiry" as referring only to § 4B1.2(1)(ii) -- to "conduct that presents a serious risk of physical injury to another." But we need not reach this question, for whatever uncertainty lingers over the meaning and scope of Amendment 433 (when, and to what extent, a court can look to the offense of conviction's facts in assessing "crime of violence" status), we have determined that no inquiry into the facts is permitted when a predicate offense is enumerated as a "crime of violence" in Application Note 2 to § 4B1.2. SeeMcClenton, 53 F.3d at 584.

In the past we have expressed misgivings about including "pure recklessness" offenses within the "crime of violence" category. In Parson, a pre-Amendment 433 case, we "urge[d] that the Commission reconsider its career offender Guidelines to the extent that they cover . . . `pure recklessness' crimes." Parson, 955 F.2d at 874 (noting displeasure with the Commission's broad definition of "crime of violence" which included possible unintentional uses of force when the original congressional definition excluded such crimes). Since there has been no change in the "crime of violence" definition, "purely reckless" crimes continue to count as predicate offenses for purposes of "career offender" consideration. Nevertheless, we renew our request to the Sentencing Commission to reexamine its position on the inclusion of "purely reckless" crimes as predicate offenses under the "career offender" sentencing provisions. As currently written, a defendant could be considered a "career offender" and subjected to enhanced penalties on the basis of two prior convictions for reckless conduct.

### III.
#### A.

Having concluded McQuilkin was appropriately sentenced as a "career offender," we will address his contention the district court erred in failing to depart below the applicable guidelines range.

McQuilkin contends that his designation as a "career offender" overstates his criminal history, and the district court

should have departed downward. To support his view, he cites United States v. Shoupe ("Shoupe III"), 35 F.3d 835, 836 (3d Cir. 1994), where we held a sentencing court may depart downward on both a defendant's offense level and criminal history designation if the defendant's "criminal offender" status overstates his criminal history and likelihood of recidivism. The Shoupe decision was grounded in U.S.S.G. § 4A1.3, a policy statement which provides: "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guidelines range." Although McQuilkin does not rely directly on § 4A1.3, he generally argues for a departure on the same basis as that set forth in § 4A1.3's policy statement.

We lack jurisdiction to review a refusal to depart downward when the district court, knowing it may do so, nonetheless determines that departure is not warranted. See United States v. Denardi, 892 F.2d 269, 272 (3d Cir. 1989) ("To the extent this appeal attacks the district court's exercise of discretion in refusing to reduce the sentences below the sentencing guidelines, it will be dismissed for lack of subject matter jurisdiction."); United States v. Georgiadis, 933 F.2d 1219, 1222 (3d Cir. 1991) ("we have jurisdiction to decide whether a sentencing court erred legally when not making a requested departure, but we cannot hear a challenge to the merits of a sentencing court's discretionary decision not to depart downward from the Guidelines"); United States v. Evans, 49 F.3d 109, 111 (3d Cir. 1995) ("[a] discretionary decision by the trial judge that a departure is not justified is not reviewable").

Here, the district court neither misunderstood nor misapplied the law in evaluating McQuilkin's downward departure request for "overstatement of criminal history." While the district court did not explain its rationale for declining to exercise its discretion to depart under § 4A1.3, the court explicitly stated "I am satisfied in my mind, among other reasons, that the guidelines are necessary because I believe that really you need to be institutionalized because I believe not only you are a danger to yourself, but in fact you have proven to be a danger to other people." This statement reinforces what the court's actions conveyed; its view that McQuilkin's criminal history designation did not overstate his past criminal conduct or the likelihood he would commit future crimes. Because there is no allegation the district court misapprehended the law in reviewing McQuilkin's request for departure, we have no authority to review its valid exercise of discretion.

### B.

McQuilkin also argues for departure based on his physical condition. As a result of his motorcycle accident, McQuilkin suffered injuries to his left arm. He also has a congenital defect in his left eye, affecting the eye muscle. McQuilkin contends these "handicaps" constitute a "severe medical impairment," and the district court should have departed downward in light of his condition.

Section 5H1.4 of the sentencing guidelines provides that although physical condition or appearance is not ordinarily relevant in sentencing, "an extraordinary physical impairment may be reason to impose a sentence below the applicable guideline range." McQuilkin seizes on this language, claiming he suffers from an "extraordinary physical impairment," which would place him at risk for improper medical treatment in prison and make him a target of other prison inmates.

At sentencing, the district court found McQuilkin's condition was "not that type of an impairment so severe and complete that the downward departure [was] . . . warranted." The court's determination that McQuilkin did not have the kind of impairment described in §5H1.4 which "warrants" a departure could have meant one of two things: that McQuilkin's impairment was not extraordinary enough to allow the court to depart under the authority of § 5H1.4; or that the nature of the impairment was sufficiently extraordinary to allow the court to depart, but that the court elected not to depart on this occasion. We believe the court meant the former, in which case, we review this finding for clear error. There is no clear error here. If the court meant the latter, it would be unreviewable as a refusal to exercise discretion. See Denardi, 892 F.2d 269. Either way, McQuilkin's contention the court erred in refusing to depart on the basis of his physical condition lacks merit.

IV.

A.

The final issue is whether the district court used the correct "offense statutory maximum" to calculate McQuilkin's offense level under § 4B1.1. Section 4B1.1 contains a table which determines a defendant's offense level based on the maximum sentence authorized by statute for an offense. "If the offense level for a career criminal offender from the table . . . is greater than the offense level otherwise applicable, the offense level from the table . . . shall apply." U.S.S.G. § 4B1.1. The table offense level is combined with the criminal history status of a "career offender" (always Category VI) to arrive at the sentence for that "career offender."

The offense level for a "career offender" depends on the statutory maximum term of imprisonment, which in the case of drug offenses depends on the type and quantity of drugs involved. The district court found McQuilkin was responsible for more than 100 grams of methamphetamine. Because McQuilkin had a prior conviction for a felony drug offense, the maximum statutory penalty he faced was life imprisonment; if he had not previously been convicted of a drug felony, the maximum penalty for his offense would have been forty years.

The district court used life imprisonment as the maximum statutory penalty to determine McQuilkin's offense level under § 4B1.1's table for career offenders, and concluded his offense level was 37. But Application Note 2 to § 4B1.1 directs the sentencing court to ignore any increases in the offense statutory maximum based on the defendant's prior criminal record. McQuilkin contends that by using life rather than 40 years to determine the appropriate offense level under § 4B1.1, the district court erred

and imposed a longer sentence than the law permits.  He suggests his offense level under § 4B1.1 should have been 34, resulting in a sentencing range of 262–327 months.

The government contends Application Note 2's instruction to ignore any increases in the offense statutory maximum based on the defendant's prior criminal record is invalid, because it is inconsistent with a federal statute, 28 U.S.C. § 994(h).  McQuilkin argues the Application Note does not conflict with § 994(h).

B.

The validity of U.S.S.G. § 4B1.1's Application Note 2 is a matter that has vexed several sister Courts of Appeals, yielding opposing views.  United States v. Fountain, 83 F.3d 946 (8th Cir. 1996) (finding Note invalid); United States v. Hernandez, 79 F.3d 584 (7th Cir. 1996) (same), petition for cert. filed, 64 U.S.L.W. 2627 (U.S. June 17, 1996) (No. 95-9335); United States v. Novey, 78 F.3d 1483 (10th Cir. 1996) (same), petition for cert. filed, 64 U.S.L.W. 2627 (U.S. April 29, 1996) (No. 95-8791); but see United States v. Dunn, 80 F.3d 402 (9th Cir. 1996) (finding Note valid); United States v. LaBonte, 70 F.3d 1396 (1st Cir. 1995) (same), cert. granted, 116 S. Ct. 2545 (1996).  Even though the Supreme Court has decided to review the conflict, pending appeal, we nonetheless align ourselves with the Courts of Appeals for the Seventh, Eighth and Tenth Circuits, which have found Application Note 2 and § 994(h) irreconcilable.

C.

Commentary in the guidelines is binding unless it runs afoul of the Constitution or a federal statute, or is plainly erroneous or inconsistent with the section of the guidelines it purports to interpret.  Stinson, 508 U.S. at 42-45.  We find Application Note 2 to § 4B1.1 invalid because it conflicts with the statutory mandate of § 994(h).

Forceful arguments discussing the validity of Application Note 2 have been advanced by the five Courts of Appeals that have already spoken.  We need not reinvent the wheel by repeating their exhaustive analyses.  It is sufficient to say we are convinced by the approach of the Seventh, Eighth, and especially, Tenth Circuits, and note the principal reasons for our agreement.

In Novey, 78 F.3d 1483, the Tenth Circuit turned first to the language in § 994(h), and found Application Note 2 inconsistent with the statute.  Id. at 1487.  Section 994(h) provides:

The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and --
(1) had been convicted of a felony that is --
(A) a crime of violence; or
(B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. § 841), sections 1002(a), 1005 and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. §§ 952(a), 955, and 959), and the Maritime Drug Law Enforcement Act (46 U.S.C.App. § 1901 et seq.);

and
    (2) has previously been convicted of two or
   more prior felonies, each of which is --
      (A) a crime of violence; or
      (B) an offense described in section
      401 of the Controlled Substances Act
      (21 U.S.C. § 841), sections 1002(a),
      1005 and 1009 of the Controlled
      Substances Import and Export Act (21
      U.S.C. §§ 952(a), 955, and 959), and
      the Maritime Drug Law Enforcement
      Act (46 U.S.C.App. § 1901 et seq.).

28 U.S.C. § 994(h). The court concluded the phrase "maximum term authorized" could only be interpreted to mean "maximum enhanced term authorized." It explained, "[b]ecause the `maximum term authorized' for categories of defendants in which the defendant has two prior qualifying felony convictions is necessarily the enhanced statutory maximum, we find no ambiguity in the statute. It would make no sense for the statute to require the `maximum term authorized' to be considered in the context of defendants with two or more prior qualifying felony convictions unless it was intended that phrase mean the enhanced sentence resulting from the pattern of recidivism." Id.; see also Fountain, 83 F.3d at 952 ("There is no ambiguity in the directive contained in section 994(h)."). We find this analysis convincing.

We also agree with the Seventh, Eighth and Tenth Circuits that reading Application Note 2's use of the term "maximum" to refer to unenhanced sentences "relegates the enhanced penalties Congress provided for in [statutes like 21 U.S.C § 841] . . . to the dust bin." Hernandez, 79 F.3d at 595; see also Fountain, 83 F.3d at 953; Novey, 78 F.3d at 1488; LaBonte, 70 F.3d at 1415 (Stahl, J., concurring in part and dissenting in part). Such an interpretation strains credulity, and would undermine Congress' clear intent in § 994(h) to augment rather than scale back the sentences of qualifying recidivist offenders.

Finally, we concur with the Tenth Circuit's overview of the statute. "Section 994(h) does not mandate that each individual defendant receive a sentence `at or near the maximum term authorized.' Rather, the statute directs the Commission to assure that the guidelines specify such a term `for categories of defendants' in which the defendant is a recidivist violent felon or drug offender. Sentence adjustments based on the circumstances of an individual defendant, such as acceptance of responsibility, substantial assistance to the investigation, or any other mitigating factor, are not implicated." Novey, 78 F.3d at 1489-90 (footnote omitted) (emphasis in original). In light of our understanding of § 994(h), the First Circuit's view that it is difficult for the Commission to ensure "that career offenders will invariably receive sentences `at or near' each individual's" enhanced sentence maximum is not convincing. Such a rationale cannot support the notion that Application Note 2 rests on a permissible Commission interpretation of the statute. LaBonte, 70 F.3d at 1409-10 ("[T]he phrase `at or near,' as employed in this statute, suggests a continuum of sentences, each relatively further

from, or closer to, the statutory maximum").  Given the clear language of § 994(h), and its apparent tension with a proliferating scheme of statutory sentence enhancement provisions based on past criminal conduct, we believe Application Note 2 is fatally inconsistent with § 994(h).

V.

For the foregoing reasons we will affirm the judgment of sentence imposed by the district court.