UNITED STATES of America

v.

Dwight MILNER, Appellant.

No. 97–7605

United States Court of Appeals, Third Circuit.

Argued July 16, 1998.

Decided Sept. 15, 1998.

---

David M. Barasch, United States Attorney, George J. Rocktashel (Argued), Assistant United States Attorney, Middle District of Pennsylvania, Williamsport, PA, for Appellee.

Robert H. Bascom, Jr., State College, PA, for Appellant.

Before: BECKER, Chief Judge, STAPLETON, and WEIS, Circuit Judges.

## OPINION OF THE COURT

EDWARD R. BECKER, Chief Judge.

This is an appeal from a judgment of the district court imposing a sentence of 188-months in prison on defendant Dwight Milner, who pled guilty to a charge of possession with the intent to distribute in excess of 100 grams of heroin pursuant to 21 U.S.C. § 841(a)(1). Milner entered his plea pursuant to a plea agreement with the government in which the government agreed to "recommend the applicable mandatory minimum sentence of five (5) years imprisonment." The presentence investigation report ("PSI") prepared by the probation office, however, determined that Milner qualified as a career offender under the Sentencing Guidelines, see U.S.S.G. § 4B1.1, and that that status mandated a guideline range in this case of 188—235 months imprisonment. The district court adopted the conclusions of the PSI, including the determination that Milner was in fact a career offender, and fixed the guideline range as suggested in the PSI. After this finding was announced to the parties at the sentencing hearing, the government recommended that the court sentence Milner at the bottom of the range. Milner now claims that this recommendation was a breach of the plea agreement requiring us to remand for a new sentencing. We hold that it is not.

### I.

The relevant facts underlying Milner's conviction were proffered by the government at Milner's change of plea hearing.[1] At 7:05 p.m. on March 25, 1997, a Greyhound bus entered the Bestway Truck Plaza in Milesburg, Pennsylvania, for a scheduled rest stop. At that time, agents of the Pennsylvania Attorney General's Bureau of Narcotics Investigation were conducting a drug inter-

---

1. Milner agreed with the government's recitation of the facts.

diction operation. The agents asked to speak with Milner, who was a passenger on the bus, and he agreed. After inquiring whether Milner possessed any drugs, to which he responded in the negative, the agents requested permission to search Milner and a backpack that he was carrying. Milner assented to the request, and provided his jacket and backpack to the agents.

While searching the backpack, investigators observed a hypodermic needle protruding from a pair of pants. Investigators also found a cigarette pack with a bottle cap, which they recognized as a device used to mix heroin prior to injection. *Id.* When the agents searched Milner's jacket, they found two packets of heroin, and Milner was arrested soon thereafter. *Id.* at 21.

After his arrest, Milner agreed to cooperate with the government and speak with an FBI agent. He informed the agent that at the time of his arrest he was en route from New York to Detroit with approximately one-quarter pound of heroin. In addition, he informed the agent that, prior to the trip resulting in his arrest, he had made four to five other trips by bus between Detroit and New York to obtain similar quantities of heroin. *Id.* Finally, Milner stated that a few days before his arrest, he had traveled to New York with $12,000 in cash for drugs previously fronted to him.

The Grand Jury returned a one count indictment against Milner, charging him with possession with intent to distribute and distribution of in excess of 100 grams of heroin. Milner pled guilty to the indictment pursuant to a plea agreement. In exchange for his plea, the government agreed to make a number of non-binding recommendations at sentencing. Included among these recommendations was the government's promise that:

> At the time of sentencing, the United States will recommend the applicable mandatory minimum sentence of five (5) years imprisonment.

*Id.* at 31.

Following Milner's guilty plea, the probation office conducted a presentence investigation and prepared the PSI. The PSI revealed that Milner's actual name was Dwight Kavannah Carpenter, and that in the past he had used various other aliases.[2] In addition, the PSI reported that Milner had been convicted for distribution of controlled substances on two prior occasions in Wayne County, Michigan. According to the PSI, when Milner was initially interviewed by the probation office, he "provided false information regarding his identity and prior record." Since these statements did not hinder the investigation, however, the PSI concluded that they did not warrant a sentence enhancement for obstruction of justice. Based on his prior convictions, the PSI concluded that Milner should be considered a career offender under U.S.S.G. § 4B1.1, and that his criminal history category should be set at VI. Pursuant to U.S.S.G. § 4B1.1(B), the PSI also concluded that Milner's offense level should be set at 31, resulting in a guideline imprisonment range of 188 to 235 months. Milner did not object to the PSI.

At the sentencing hearing, the district court adopted the factual findings and the guideline calculations contained in the PSI, including the ultimate determination that the applicable imprisonment range was 188 to 235 months. In the colloquy that ensued, the government made the following statement:

> Your honor, in this case in the plea agreement we did make a recommendation of 60 months. That recommendation was inspired in part on our calculation of the criminal history which was based on information supplied by Mr. Milner at or about the time of his initial arrest.
>
> As the probation officer found during his presentence investigation, and as later determined by the FBI case agent in the case, the defendant did use another name in the Michigan state criminal justice system, and after that alias was identified, his convictions which result in a career offender status here were discovered.
>
> Accordingly, in light of some of the false representations that were made with respect to his identity and his criminal background, both to the agent and to the probation officer in this case, we are not going to be filing and have not filed a motion for a downward departure under Section § 5K1.1 of the guidelines.

**2.** We will continue to refer to the defendant as Milner.

Despite that, up until the point where those false representations were made, this defendant did cooperate with state and federal authorities ... and because he did do that at the outset and he was cooperative with the investigators, *it will be our recommendation that when the Court sentences within the guideline range, which is undisputed here, that the Court sentence him at the bottom of the range which is 188 months, rather than at the higher end of the range which, as the Court indicated, was 235 months.*

We note that our recommendation of 60 months is the mandatory minimum, but because the defendant based on his prior convictions as later learned by both the probation officer and the FBI agent, he is a career offender. Consequently, his guideline range is much higher than originally thought. For those reasons we would ask the Court to sentence him at the bottom end of the guideline range in this case.

(emphasis added). The court agreed with the government that the minimum of the applicable range was adequate, and imposed a term of imprisonment of 188 months. *Id.* at 46–47. Milner then filed this timely appeal.

### II.

Under the applicable Supreme Court doctrine, "[w]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The doctrine that the government must adhere to the terms of its bargain is so fundamental that even inadvertent breaches that did not influence the court still require vacatur. *See United States v. Hayes,* 946 F.2d 230, 233 (3d Cir.1991). According to Milner, these basic principles prohibited the government from recommending a sentence greater than the five year mandatory minimum to which it had stipulated.

The government responds that the application of the career offender provision preempted the mandatory minimum term, rendering its stipulated agreement a nullity.

In such a circumstance, the government contends that its decision to recommend the lowest possible sentence available under the guidelines was consistent with a plea agreement that essentially contemplated the recommendation of the lowest available sentence. Moreover, the government argues that, since the court could not lawfully impose a sentence of 60 months—which would be below the applicable guideline range—its recommendation of the lowest possible sentence was consistent with what was reasonably understood by the defendant when he entered the plea. *See United States v. Badaracco,* 954 F.2d 928, 939 (3d Cir.1992).

In *United States v. Nolan–Cooper,* 155 F.3d 221 (3d Cir.1998), the government agreed to make a recommendation within the stipulated guideline range of 41 to 51 months incarceration. The district court, however, determined that the applicable range was actually 63 to 78 months. The government then made a statement that was a clear attempt to persuade the court to impose a severe sentence. 155 F.3d at 238–39. We held that such commentary constituted a breach of the plea agreement, and suggested that when the applicable guideline range has a low end above the stipulated range, the government should have nothing further to say. *See id.* 155 F.3d at 239–40.

We observed that there could be an exception to this rule under certain circumstances—so long as the government does no more than recommend the lowest end of the applicable range:

> To illustrate the limits of our holding, we identify a possible exception to this rule. If the government otherwise adheres to the terms of the plea agreement, and the court independently determines that the applicable range is higher than that stipulated to, it would not appear to be a breach if the government states only that in light of the changed circumstances, the court should impose the lowest end of the applicable range.

*See id.,* 155 F.3d at 239–40. We formally adopt that exception here, though we note that it does not apply if the government

argues for the application of a sentence enhancement provision (even if permitted under the plea agreement) and the resulting sentencing range is higher than the stipulated range in part because the district court accepted the government's position on that enhancement. In that case, the government essentially would receive more than it had bargained for when it entered into the plea agreement.[3]

■ We find that the *Nolan–Cooper* exception is controlling here, so that the government's actions do not constitute a breach. While the government could have said nothing, or simply reiterated that it was "stuck" with its recommendation of sixty months, we do not believe that in the present circumstances the government's decision to recommend the lowest possible sentence was inconsistent with Milner's reasonable expectations of the government's obligations under the plea agreement. Unlike *Nolan–Cooper*, in which the government arguably lobbied for the increased range by virtue of its position on various Sentencing Guideline enhancement provisions, here the government was not responsible for the higher range. The applicability of the career offender enhancement to Milner was triggered by the Probation Office's discovery of his prior criminal record. Once this information was brought to the court's attention, the career offender enhancement had to apply by operation of law. The government took no position at the sentencing hearing that could have borne on (or mandated) the court's decision to apply a higher range.

Indeed, if the government had remained silent the district court might conceivably have imposed a *higher* sentence. Moreover, we have not been provided, nor have we found, any support for Milner's suggestion that the government should be obligated in these circumstances to argue for a downward departure. In sum, we are simply at a loss to see what else the government should have done in these circumstances.

The judgment of the district court will be affirmed.

---

3. To illustrate this last point, consider the following example. Suppose that the plea agreement states that the government will not take a position on enhancements X and Y, and that the government will recommend a sentence of 60 months. If the government abides by its promises with regard to these enhancements, and does not argue for the applicability of any other enhancements not discussed in the plea agreement, the *Nolan–Cooper* exception would apply if the district court determines that the correct range has a low end higher than 60 months. Suppose, on the other hand, that the government does not take a position on enhancements X and Y, but does argue that another enhancement should apply. In that case, if the resulting range has a low end higher than 60 months, the *Nolan–Cooper* exception should not apply since the stipulated recommendation has been rendered a nullity by virtue of the government's own actions at sentencing.