Carl BROWN, Petitioner,

v.

UNITED STATES of America, Respondent.

Civil Action No. 96–2865 (MLC).

United States District Court, D. New Jersey.

July 26, 1999.

Lisa Van Hoeck, Assistant Federal Public Defender, Trenton, NJ, for Petitioner.

Thomas A. Brown, Jr., Assistant United States Attorney, Camden, NJ, for Respondent.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on the motion of petitioner Carl Brown to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth in this Memorandum Opinion, the Court will deny petitioner's motion.

### I. BACKGROUND

Petitioner was indicted in a two-count Indictment charging him with the following: (1) possession with intent to distribute in excess of 50 grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Count One), and (2) possession with intent to distribute in excess of 50 grams of crack cocaine within 1,000 feet of a public elementary school in violation of 21 U.S.C. § 860 (Count Two). (Indictment, *United States v. Brown,* Crim. No. 94–393(MLP), filed 7–26–94.) The charges arose out of the arrest of petitioner on April 30, 1994 in Camden, New Jersey, in which approximately 188 grams of crack cocaine were found to be in his possession during surveillance of a drug sales transaction. (Presentence Investigation Report dated 1–31–95 ("PSR") ¶¶ 8, 9.) Petitioner pled guilty on November 1, 1994 to the Count One charge, pursuant to a written plea agreement. (*Id.* ¶ 1.) Petitioner was represented by retained counsel throughout the proceedings in the District Court.

The sentencing hearing was conducted on February 3, 1995, at which petitioner received a sentence of 262 months imprisonment, 5 years of supervised release, and a waiver of any fine. (Judgment of Conviction entered 2–7–95.) The term of imprisonment was at the low end of his Guideline range of 262 to 327 months, based upon a total offense level of 34 and a criminal history category of VI. (PSR ¶ 53.) His offense level and criminal histo-

ry included career offender enhancements pursuant to Guideline section 4B1.1.[1] (*Id.* ¶¶ 23, 35.) *See* U.S. Sentencing Guidelines Manual ("USSG" or "Guidelines") § 4B1.1 (Nov.1994). The qualifying prior convictions for career offender status were state offenses of aggravated assault on a police officer, possession of controlled dangerous substance with intent to distribute, and possession of C.D.S. together with aggravated assault on a police officer.[2] (PSR ¶¶ 29, 33, 34.)

■ Petitioner thereafter obtained the services of appointed counsel, the Federal Public Defender's Office, and filed his appeal. His judgment of conviction and sentence were summarily affirmed, without prejudice to his right to raise ineffective assistance of counsel claims on collateral review. *United States v. Brown,* No. 95–5205, 1995 WL 729441 (3d Cir. Nov.29, 1995) (unpublished judgment order). Petitioner, who continues to be represented by the Public Defender, timely filed the instant motion (hereinafter "Petition" or "Pet.") pursuant to 28 U.S.C. § 2255.[3] We have considered the Petition on the papers submitted in accordance with Federal Rule of Civil Procedure 78.[4]

## II. DISCUSSION

### A. Petitioner's Allegations

Section 2255 of Title 28, United States Code, provides that a prisoner in custody

---

1. A defendant qualifies for career offender status if "(1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense or conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1.

2. The sentence was calculated under the Guidelines as follows. The offense level was a base offense level of 34 for at least 150 but less than 500 grams of cocaine base, § 2D1.1(c)(3); an enhanced offense level of 37 for career offender status, § 4B1.1; and a three-point reduction for acceptance of responsibility, §§ 3D1.1(a)-(b); for a total offense level of 34. (PSR ¶¶ 14–26.) The criminal history points totaled 11, which would usually establish a criminal history category of V. However, under career offender status the criminal history category became VI pursuant to § 4B1.1. Petitioner had numerous other arrests and several other convictions in addition to the three qualifying career offender offenses. (*Id.* ¶¶ 27–42.) If career offender status had not applied, for the instant offense petitioner would have had a total offense level of 31 and criminal history category of V. (*Id.* ¶¶ 22, 35.) Those figures, if applicable, would have produced a Guideline range for imprisonment of 168–210 months. USSG Sentencing Table (Nov. 1994). The Count One offense carried a statutory imprisonment range of 10 years (mandatory minimum) to life. (*Id.* ¶ 52.)

3. Petitioner's conviction became final for purposes of the one-year time limit under 28 U.S.C. § 2255 when his time to file a petition for certiorari to the United States Supreme Court expired following the affirmance of his conviction by the Court of Appeals by Judgment Order entered Nov. 29, 1995. *See Kapral v. United States,* 166 F.3d 565, 570 (3d Cir.1999). He filed this action on June 12, 1996, which was well within that limit. We later authorized him to supplement his petition, by order entered March 30, 1998. The Third Circuit has recently ruled that supplementation must be evaluated by the court to determine whether it violates the one-year limitation period or may be deemed to "relate back" to the original filing date. *See United States v. Duffus,* 174 F.3d 333, 337 (3d Cir. 1999). We will proceed to the merits of the supplemental petition here, without determining whether it would be barred under *Duffus,* because we granted express leave to supplement prior to the date of that decision, and because we conclude that the supplemental claim does not alter our review or the outcome in this case.

4. The record reviewed in this matter includes the following: (1) Notice of Motion pursuant to 28 U.S.C. § 2255 filed 6–12–96; (2) petitioner's Memorandum of Law ("Pet.Br."); (3) petitioner's Appendix ("App."), containing copies of all relevant documents filed in the criminal case; (4) government's Answer ("Ans."); (5) petitioner's Supplemental Notice of Motion filed 5–28–98 pursuant to leave granted by Order entered 3–30–98; (6) petitioner's Supplemental Memorandum of Law ("Pet.Supp.Br."); (7) government's 7–30–98 supplemental letter brief ("Supp.Ans."), with attached exhibits 1–3. This Court is able to rule on petitioner's § 2255 motion without an evidentiary hearing, for reasons explained below.

under sentence of a federal court may move before the court which imposed the sentence to vacate, correct, or set aside a sentence, on the grounds that

the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255. The instant Petition seeks to vacate, set aside or correct the sentence claiming ineffective assistance of counsel in the following respects: (1) his counsel allegedly failed to move for a downward departure under Guidelines section 4A1.3 on the ground that the career offender designation overstated the seriousness of defendant's criminal history, (Pet. Br. at 7–14), and (2) before defendant pled guilty he was allegedly told by his counsel that if he entered a guilty plea he would receive a ten-year sentence, and he was not told of possible career offender status. (Pet. Supp. Br. at 1). Petitioner has the burden of establishing each of the claims in the Petition. *See United States v. Abbott,* 975 F.Supp. 703, 705 (E.D.Pa. 1997).

B. *Standard for Ineffective Assistance of Counsel*

 Petitioner asserts each of his claims under the theory of ineffective assistance of counsel. A petitioner is barred from collaterally attacking his sentence pursuant to 28 U.S.C. § 2255 so far as that attack is based upon alleged errors that could have been, but were not, raised on direct appeal. *See United States v. Frady,* 456 U.S. 152, 162–63, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *United States v. Essig,* 10 F.3d 968, 979 (3d Cir.1993). To avoid the resulting procedural bar, a petitioner generally must prove "both (1) 'cause' excusing his … procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Frady,* 456 U.S. at 168, 102 S.Ct. 1584. A petitioner need not, however, demonstrate cause and prejudice when he raises a claim

of ineffective assistance of counsel initially in a § 2255 motion. The Third Circuit has clearly stated its preference that such claims be addressed in the first instance by the district court under a § 2255 motion. *See, e.g., United States v. Tobin,* 155 F.3d 636, 643 (3d Cir.1998); *United States v. Nahodil,* 36 F.3d 323, 326 (3d Cir.1994); *United States v. DeRewal,* 10 F.3d 100, 103–04 (3d Cir.1993), *cert. denied,* 511 U.S. 1033, 114 S.Ct. 1544, 128 L.Ed.2d 196 (1994). Accordingly, we will review each issue on the merits.

The Sixth Amendment provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to " 'reasonably effective assistance' of counsel." *United States v. Day,* 969 F.2d 39, 42 (3d Cir.1992) (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The Supreme Court in *Strickland* has set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas,* 759 F.2d 1073, 1081 (3d Cir.1985).

The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690, 104 S.Ct. 2052. Courts must recognize the strong presumption that counsel has rendered adequate assistance and that all significant decisions were made in the exercise of reasonable professional judgment. *Id.* at 689, 104 S.Ct. 2052; *see also Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir.1999); *Reese v. Fulcomer*, 946 F.2d 247, 256–57 (3d Cir.1991), *cert. denied*, 503 U.S. 988, 112 S.Ct. 1679, 118 L.Ed.2d 396 (1992); *United States v. Gray*, 878 F.2d 702, 710 (3d Cir.1989). The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

The second prong of the *Strickland* test requires the petitioner to show that counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. The petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

The *Strickland* Court further held that both prongs must be established in order to meet the claimant's burden, and that if either prong is not satisfied the claim must be rejected, stating:

Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697, 104 S.Ct. 2052.

The established test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Where a defendant is represented by counsel and enters a guilty plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). In *Hill*, the Supreme Court held that a claim of ineffective assistance of counsel in the context of a guilty plea is subject to the same standard of attorney competence set forth in the first prong of the *Strickland* test, and that in order to satisfy the "prejudice" requirement, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 58–59, 106 S.Ct. 366; *see Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir.1995), *cert. denied*, 516 U.S. 1058, 116 S.Ct. 734, 133 L.Ed.2d 684 (1996) (citing *Hill*). In setting forth that standard, the Court in *Hill* emphasized the "fundamental interest in the finality of guilty pleas." *Hill*, 474 U.S. at 58, 106 S.Ct. 366 (citing *United States v.*

*Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979)).

### C. Standard for Determining § 2255 Procedure

The procedural requirements for review of a § 2255 petition in the district court are set forth in the statute and the implementing rules. *See generally* 28 U.S.C. § 2255; Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules").[5] The Third Circuit has described the district court's duty in that regard as follows:

> When a motion is made under 28 U.S.C. § 2255 the question of whether to order a hearing is committed to the sound discretion of the district court. In exercising that discretion the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record. Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief. . . .

*Day,* 969 F.2d at 41–42 (quoting *Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir. 1989)); *see also United States v. Friedland,* 83 F.3d 1531, 1542–43 (3d Cir.1996)

(same). In this case we conducted the initial review of petitioner's motion, brief and appendix under Section 2255 Rule 4(b), and directed the government to file its Answer. At a later time, petitioner mailed to the Court a defective *pro se* motion to supplement the Petition. We reviewed that request and granted leave for petitioner's counsel to file a supplemental motion, which the government also answered. *See* n.3 *supra.* Having reviewed the materials thus submitted, together with the complete record of the underlying criminal case, we find that they show conclusively that petitioner is not entitled to relief on the claims asserted. Accordingly we will decide the matter without an evidentiary hearing, explaining our reasons as we address each of petitioner's asserted grounds for relief.

### D. Alleged Failure to Seek § 4A1.3 Departure

█ Petitioner first contends that he was deprived of effective assistance of counsel at sentencing when defense counsel failed to move for a downward departure under § 4A1.3 on the grounds that the career offender designation overstated the seriousness of his prior record.[6] (Pet. Br. at 7–14.) While petitioner acknowledges that defense counsel did move for a

---

5. The pertinent portions of the Section 2255 Rules provide as follows:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified. Otherwise, the judge shall order the United States Attorney to file an answer or other pleading ... or to take such other action as the judge deems appropriate.

Section 2255 Rule 4(b).

> [Provisions pertaining to Answer, Supplementing the Answer, Discovery and Expansion of the Record.]

*Id.* Rules 5–7.

> If the motion has not been dismissed at a previous stage in the proceeding, the judge,

after the answer is filed and any transcripts or records of prior court actions in the matter are in his possession, shall, upon a review of those proceedings and of the expanded record, if any, determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the motion as justice dictates.

*Id.* Rule 8(a). Counsel must be appointed for a qualifying movant under 18 U.S.C. § 3006A(g) if an evidentiary hearing is ordered. *Id.* Rule 8(c); *United States v. Iasiello,* 166 F.3d 212, 213 (3d Cir.1999).

6. Section 4A1.3 is a Guidelines Policy Statement that provides in pertinent part as follows:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a

downward departure at sentencing, he argues that counsel's performance was deficient in failing to cite and argue the particular Guidelines provision, which was § 4A1.3, and significant Third Circuit precedent, *United States v. Shoupe*, 35 F.3d 835 (3d Cir.1994) ("*Shoupe III*"). (*Id.*) The government points out that petitioner's counsel at sentencing objected that § 4B1.1 "shouldn't really apply," arguing that defendant's criminal history was not as serious as his criminal record would suggest, and that defendant was not likely to commit future crimes; and that counsel "urge[d] th[e] court to depart from the guidelines." (Ans. at 4 (quoting Pet.App. at 32–38).) We find that petitioner's claim raising this issue lacks merit in several respects.

First, petitioner already raised this contention on direct appeal, arguing that this Court "failed to recognize that it had the authority to depart from the Sentencing Guidelines," and the Circuit rejected the argument in its Judgment Order of affirmance. (Pet.App. at 72.) It is well settled that the appeals court "lack[s] jurisdiction to review a refusal to depart downward when the district court, knowing it may do so, nonetheless determines that departure is not warranted." *United States v. McQuilkin*, 97 F.3d 723, 729 (3d Cir.1996). A refusal by the sentencing court to depart downward is not remanded

on appeal unless the district court mistakenly believed that it lacked authority to depart, *see, e.g., United States v. Gaskill*, 991 F.2d 82, 84 (3d Cir.1993); or the record is unclear as to whether the district court realized it had the requisite authority. *Cf. United States v. Brown*, 991 F.2d 1162, 1167 (3d Cir.1993) (remanding where record was ambiguous as to whether sentencing court realized it had authority to entertain constitutional challenges to prior convictions used to determine career offender status). In this case, it is clear from the denial of petitioner's appeal on that ground that the Court of Appeals was satisfied that the record of the sentencing indicated that this Court did recognize its authority to depart under § 4A1.3.

We also find that petitioner cannot demonstrate prejudice from his attorney's failure to cite to § 4A1.3 and *Shoupe III*. A timely motion for downward departure was made by his attorney on his behalf and this Court did carefully consider it before determining to impose a sentence within the Guideline range. (Pet.App. at 32–49.) While we acknowledge that the language we employed in rejecting the motion for downward departure did not cite or articulate the criteria of § 4A1.3, nevertheless based upon the facts of petitioner's prior criminal record, we simply did not consider those facts to warrant a § 4A1.3 departure.[7] Instead, we took into account the

---

sentence departing from the otherwise applicable guideline range. Such information may include, but is not limited to, information concerning:
(a) . . .
(b) prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions;
(c) prior similar misconduct established by a civil adjudication or by a failure to comply with an administrative order;
(d) whether the defendant was pending trial or sentencing on another charge at the time of the instant offense;
(e) prior similar adult criminal conduct not resulting in a criminal conviction.
. . . .
There may be cases where the court concludes that a defendant's criminal history

category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes. An example might include the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period.
USSG § 4A1.3.

7. In *McQuilkin*, the Court of Appeals analyzed a similar circumstance involving a career offender enhancement as follows:
Although [defendant] does not rely directly on § 4A1.3, he generally argues for a departure on the same basis as that set forth in § 4A1.3's policy statement.
. . . .
Here, the district court neither misunderstood nor misapplied the law in evaluating

mitigating factors of his background in determining that the sentence would be at the bottom of the Guideline range. *See United States v. Ricks,* 5 F.3d 48, 50 n. 1 (3d Cir.1993) (noting that sentencing court, in denying § 4A1.3 departure, "determined that the balance between departure and deterrence counseled sentencing [defendant] at the bottom of the range for career offenders.").

We conclude that petitioner has not met his burden of demonstrating "prejudice" under the second prong of the *Strickland* test, because he has not demonstrated that even if his attorney had articulated his motion for downward departure under § 4A1.3 and *Shoupe III,* there is a reasonable probability that this Court would have granted the requested departure. To the contrary, we find that based upon our review of petitioner's criminal history both at the time of the sentencing, and with the benefit of hindsight, we did not and do not believe that departure on that ground was warranted.[8] Thus it is not necessary for

[defendant's] downward departure request for "overstatement of criminal history." While the district court did not explain its rationale for declining to exercise its discretion to depart under § 4A1.3, the court explicitly stated "I am satisfied in my mind, among other reasons, that the guidelines are necessary because I believe that really you need to be institutionalized because I believe not only you are a danger to yourself, but in fact you have proven to be a danger to other people." This statement reinforces what the court's actions conveyed; its view that [defendant's] criminal history designation did not overstate his past criminal conduct or the likelihood he would commit future crimes.

*McQuilkin,* 97 F.3d at 729.

8. Career offender status requires two prior qualifying convictions. *See* note 1, *supra.* At the time petitioner was sentenced on the instant offense in 1995, he was 30 years old and had a lengthy criminal record which included three qualifying state felony convictions: (1) aggravated assault of a police officer in 1982; (2) possession of controlled dangerous substance with intent to distribute in 1988; and (3) aggravated assault of a police officer in 1988, together with possession of C.D.S. (PSR ¶¶ 29, 33, 34.) He had violated probation with respect to all three of those convictions, resulting in an 18-month V.O.P. custodial

us to make a finding under the first prong of *Strickland* on this claim. *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. Based upon these holdings we find that the existing record shows conclusively that petitioner is not entitled to relief on this claim, and that no hearing is required. *Cf. Hill,* 474 U.S. at 60, 106 S.Ct. 366 ("Because petitioner in this case failed to allege the kind of 'prejudice' necessary to satisfy the second half of the *Strickland v. Washington* test, the District Court did not err in declining to hold a hearing on [his] claim of ineffective assistance of counsel.").

### E. Alleged Failure to Advise of Career Offender Exposure

Petitioner contends in his supplemental motion that his defense counsel told him that he would receive a sentence of ten years if he pled guilty, and that prior to pleading guilty he was not warned by his counsel that he could possibly qualify as a career offender. He asserts that but for these errors of counsel, he would have pled

sentence in 1983 and a four-year custodial sentence imposed concurrently with respect to the latter two V.O.P. charges in 1991. (*Id.*) As of April 30, 1994 he was again in the community, when he was arrested on the charges which led to his conviction in this case, which were originally lodged by the state and were replaced by federal charges as of July 28, 1994. (*Id.* ¶ 42; Pet.App. at 2.) Released by this Court on July 28, 1994 on $100,000 bond (secured by 10% cash), petitioner was again arrested by local authorities at his home in January, 1995 for unlawful possession of cocaine, which charge was pending at the time of his sentencing in this case. (PSR ¶ 36.) His criminal record at the time of sentencing also included three property and/or disorderly persons convictions at ages 20–21, (*id.* ¶¶ 30, 31, 32), and numerous arrests at ages 18–22 in addition to the later arrests at ages 29–30. (*Id.* ¶¶ 37–41.) The undercover surveillance investigation of the instant offense began as a result of complaints received by the Camden Police Department regarding street level narcotics sales in a specific area of Camden. At the time of his arrest which led to the instant conviction he was engaged in a narcotics sales transaction and had in his possession 187.92 grams of crack cocaine. (*Id.* ¶¶ 7–9, 14.)

not guilty and would have proceeded to trial.[9] (Pet. Supp. Br. at 1.) He seeks an evidentiary hearing and to have his guilty plea and sentence set aside. (*Id.* at 2.) At the pleadings stage of the inquiry, we were obliged to accept those factual allegations as true. *Day,* 969 F.2d at 42 (citing *Forte,* 865 F.2d at 62).

Petitioner places primary reliance upon the decision of our Court of Appeals in *Day.* (Pet. Supp. Br. at 2–5.) There, the petitioner was convicted at trial of drug-related offenses, and his unenhanced sentence range would have been 110 to 137 months (9 years, 2 months to 11 years, 5 months), but with career offender enhancement his range became 262 to 327 months, and he was sentenced to 262 months (21 years, 10 months). *Day,* 969 F.2d at 40. Following affirmance of the conviction on appeal, he moved to set aside the conviction under 28 U.S.C. § 2255, contending that his trial counsel had advised that he faced a maximum sentence of 11 years, and had failed to explain that he might be classified as a career offender and be subject to much greater exposure. He claimed that if he had been told his true sentence exposure, he would have accepted a plea bargain offer for a five-year sentence and would not have proceeded to trial. The district court denied the petition without directing a response from the government or holding a hearing. The Third Circuit held that the petition raised a facially valid claim of ineffective assistance of counsel during plea bargaining. *Id.* at 40. It remanded

to the district court to hold a hearing unless, after reviewing the records in the case or an answer from the government, it could conclude that there was not even a "reasonable probability" that, at the time of trial, it would have approved the alleged plea agreement. *Id.* at 46.

■ Certain of the principles addressed in *Day* are likewise applicable here. Clearly, as the court observed in *Day,* plea bargaining is a critical stage at which the right to effective assistance of counsel attaches. Thus the court declared:

> We cannot state precisely what standard defense counsel must meet when advising their clients about the desirability of a plea bargain and, concomitantly, about sentence exposure. Because the Sentencing Guidelines have become a critical, and in many cases, dominant facet of federal criminal proceedings, we can say, however, that familiarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation.
>
> We do not suggest that, to comply with the Sixth Amendment, counsel must give each defendant anything approaching a detailed exegesis of the myriad arguably relevant nuances of the Guidelines. Nevertheless, a defendant has the right to make a reasonably informed decision whether to accept a plea offer.

---

9. The exact words used by petitioner, in his deficient *pro se* motion which prompted this Court to permit his counsel to file a supplemental motion on his behalf, *see* note 3 *supra,* were as follows:

Counsel, in the present case, did not render "effective representation," as he advised petitioner, prior to his acceptance of the plea offer advanced by the Government, that no sentence greater than a ten (10) year term of imprisonment would, or could, be imposed. On this advise [sic], petitioner entered a plea of guilty. Had counsel correctly advised petitioner of his classification as a career offender, petitioner would have elected to proceed to trial. At very least,

petitioner would have requested that counsel pursue a conditional plea, by which petitioner could not be exposed to a penalty greater than that agreed upon (i.e., Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure).

"Petitioner's Motion to Amend/Supplement His Motion to Vacate, Set Aside and/or Correct His Sentence, Brought in Accordance with Title 28 U.S.C. § 2255" at 2. (Deficient motion dated 12–2–96, submitted *pro se* on the caption of the closed criminal case, District Court Criminal No. 94–393; not filed on the docket but maintained in closed chambers file.)

*Id.* at 42 (footnote omitted) (citing *Hill,* 474 U.S. at 56–57, 106 S.Ct. 366; *Von Moltke v. Gillies,* 332 U.S. 708, 721, 68 S.Ct. 316, 92 L.Ed. 309 (1948)).

Petitioner suggests that the holding of *Day* is controlling here, so that if those facts alleged by petitioner can be established at an evidentiary hearing, he will have made out a successful claim of ineffective assistance justifying relief from his conviction and sentence. In this connection petitioner argues that the fact that this Court informed him at the plea colloquy of the maximum penalty of life imprisonment and told him that his Guideline range could not be reliably predicted at that time does not bar a finding of prejudice. (Pet. Supp. Br. at 3–4.) Petitioner does not challenge the sufficiency of the Rule 11 proceeding.[10]

The government contends that *Day* is to be distinguished on its facts because in *Day,* unlike in this case, there was no plea colloquy because Day did not plead guilty. (Supp. Ans. at 4.) Here, on the other hand, there was a complete Rule 11 proceeding in which petitioner was advised on the record before entering his guilty plea that he could be sentenced under the offense statute to imprisonment within the range of the ten-year statutory minimum up to the maximum of life, and also was informed that his sentence would be subject to the federal sentencing Guidelines. (Pet. App. at 14.) Therefore, the government contends, no prejudice can be shown even if counsel failed to give adequate advice or predictions. (Supp. Ans. at 4.)

Petitioner responds that the Rule 11 colloquy, which is required to inform the defendant of only the statutory maximum and minimum imprisonment, if any, "fails in its attempt to provide a defendant with a reliable understanding of the consequences of a guilty plea." (Pet. Supp. Br. at 5.) Accordingly, urges petitioner, incompetent advice by counsel concerning the sentence exposure under the Guidelines prior to pleading guilty can result in "prejudice" so as to justify § 2255 relief. (*Id.*)

■ In general, defense counsel in a criminal case must perform according to the standard of a reasonably competent attorney. *Strickland,* 466 U.S. at 687–91, 104 S.Ct. 2052. When a defendant considers the government's offer of a plea agreement, a reasonably competent attorney will attempt to learn all of the facts of the case and to make an estimate of a likely

**10.** Petitioner's plea colloquy conformed with the requirements of Rule 11, which provides in pertinent part:

(c) ADVICE TO DEFENDANT. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, . . . .

. . . .

(d) INSURING THAT THE PLEA IS VOLUNTARY. The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or the defendant's attorney. Fed.R.Crim.P. 11(c)-(d) (eff.Dec. 1, 1989); (*see* Pet.App. at 6–25.)

The Third Circuit in *Day* expressly stated that its decision in that case, regarding the duty of defense counsel to give adequate advice concerning the structure and basic content of the Guidelines, "should not be construed as imposing on the district courts any duty, beyond the requirements of [Rule] 11(c)(1), to detail a defendant's sentence exposure during guilty plea colloquies." 969 F.2d at 43 n. 4 (adding that neither the *Day* holding nor the Advisory Committee Note to the 1989 Amendment to Rule 11 would limit the discretion of the district court to engage in a more extended colloquy with defendant to impart additional information about the Guidelines or to inquire about defendant's knowledge thereof).

sentence. *See Hill,* 474 U.S. at 56–60, 106 S.Ct. 366 (relying on *McMann v. Richardson,* 397 U.S. 759, 769–71, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). Before he allows his client to plead guilty, the attorney must also communicate the results of his analysis of the case. *McMann,* 397 U.S. at 769–71, 90 S.Ct. 1441. Although the attorney's analysis need not provide a precisely accurate prediction of the respective consequences of pleading guilty or of going to trial, the scrutiny must be undertaken in good faith. *Id.* It is deficient performance for an attorney to fail to provide good-faith advice about the sentencing consequences of a guilty plea. *Id.* at 769–71, 90 S.Ct. 1441.

■■■ It has long been settled as a general rule that where an adequate guilty plea hearing has been conducted, an erroneous prediction or assurance by defense counsel regarding the likely sentence does not constitute grounds for invalidating a guilty plea on grounds of ineffective assistance of counsel. *See Masciola v. United States,* 469 F.2d 1057, 1059 (3d Cir.1972) (citing *Wellnitz v. Page,* 420 F.2d 935 (10th Cir.1970)); *see also United States v. Marzgliano,* 588 F.2d 395, 399 n. 6 (3d Cir.1978) (explaining different rule where allegation is that plea was based on misconduct or misrepresentation by defense counsel); *United States v. Valenciano,* 495 F.2d 585, 588 (3d Cir.1974) (same). This rule has been reinforced with the advent of Guideline sentencing and the detailed procedures to be followed in conducting the Rule 11 colloquy at the guilty plea hearing. *See, e.g., United States v. Stephens,* 906 F.2d 251, 253 (6th Cir.1990) ("The mere fact that an attorney incorrectly estimates the sentence a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement.... This is especially true under the new Sentencing Guidelines.") (quoting *United States v. Sweeney,* 878 F.2d 68, 70 (2d Cir.1989) ("[The Sentencing Guidelines] reinforce our earlier decisions on the issue. Under the Guidelines there will be many more detailed hearings regarding imposition of sentence.")).

The rationale is that the Rule 11 colloquy, which advises the defendant of the minimum and maximum imprisonment range under the statute and provides other necessary information about the Guidelines sentencing process, eliminates any arguable prejudice from an earlier estimate by counsel. *See, e.g., United States v. Martinez,* 169 F.3d 1049, 1053 (7th Cir.1999) ("[A]n attorney's mere inaccurate prediction of sentence does not demonstrate the deficiency component of an ineffective assistance of counsel claim.") (citation omitted); *Gonzalez v. United States,* 33 F.3d 1047, 1051–53 (9th Cir.1994) ("The district court informed [defendant] of the maximum possible sentences and fines for the offenses to which he pleaded guilty. He responded affirmatively when asked if he was satisfied with [counsel]'s representation of him. As a result, [he] cannot claim he was prejudiced by [counsel]'s alleged gross error in calculating the sentencing guidelines range and likely sentence."); *Doganiere v. United States,* 914 F.2d 165, 168 (9th Cir.1990) ("[Defendant]'s attorney's inaccurate prediction of what sentence [he] would receive upon pleading guilty does not rise to the level of a gross mischaracterization of the likely outcome of his case, and thus does not constitute ineffective assistance of counsel.... Further, [defendant] suffered no prejudice from his attorney's prediction because, prior to accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court.") (citation omitted).

Petitioner argues in effect that an exception to this general rule should be recognized where the alleged error of counsel was a failure to advise defendant during the plea negotiation phase that he might qualify for career offender status and the resulting enhancement of his Guideline imprisonment range. (Pet. Supp. Br. at 2–5.) Petitioner contends that such a rule is compelled by the decision of our Court of Appeals in *Day.*

It is our view that although *Day* is instructive, it is not controlling on the issue presented here. That is because in *Day*, unlike in petitioner's case, the defendant was convicted after a jury trial. Courts have not hesitated to consider granting relief in such circumstances. *See, e.g., Day*, 969 F.2d at 41 (remanding § 2255 petition); *United States v. Thompson*, 27 F.3d 671, 674–679 (D.C.Cir.1994) (affirming trial court determination that counsel's failure to advise of possible career offender status before trial was deficient; remanding on issue of prejudice); *cf. United States v. Gaviria*, 116 F.3d 1498, 1511–14 (D.C.Cir.1997) (where defendant was erroneously advised by counsel that he was eligible for career offender status and went to trial, remanding for determination whether plea agreement could and would have been accepted if correct non-enhanced exposure were known). The key distinction is that the question presented in *Day* did not involve a defendant who had entered a guilty plea based upon a written plea agreement and a Rule 11 hearing. *See United States v. Horne*, 987 F.2d 833, 836 (D.C.Cir.1993) (distinguishing *Day* on this basis); *United States v. Figueroa*, No. 91–518–01, 1992 WL 301285, at *8 (E.D.Pa. Oct.14, 1992) (unreported opinion) (same).

We have found no applicable Third Circuit precedent on the precise issue presented, in the context of a Rule 11 guilty plea challenged on a § 2255 motion for relief.[11] Our review of pertinent decisions indicates that there appears to be a split of approach among those few circuits which have had occasion to address the issue.

We will briefly discuss those decisions. However, we do not find this legal issue dispositive in the instant case, for reasons that we will presently explain.

The Court of Appeals for the Fourth Circuit takes the position that assuming *arguendo* that defense counsel failed to advise the client that career offender status might apply, no prejudice under *Strickland* can be established if the Rule 11 colloquy was properly conducted. *See United States v. Foster*, 68 F.3d 86, 87 (4th Cir.1995). Petitioner in *Foster* received 151 months imprisonment based upon career offender enhancement, and contended in his § 2255 motion that his counsel had assured him that he would not be sentenced as a career offender. The district court made no specific mention of the career offender provisions during the guilty plea hearing, which the petitioner conceded complied with all the requirements of Rule 11. In affirming the district court's denial of his § 2255 motion without an evidentiary hearing, the circuit court ruled:

> We have no reason to suspect that [defendant's] attorney's performance fell below an objective standard of reasonableness. However, we do not reach this question because [he] was clearly not prejudiced by any misstatements made by his attorney.

In an attempt to establish prejudice, [defendant] maintains that if he had been correctly told that he could be sentenced as a career offender, he would not have pleaded guilty, but would have

---

**11.** *See, e.g., United States v. Amis*, 926 F.2d 328, 330–31 (3d Cir.1991) (affirming career offender sentence without prejudice to ineffective assistance claim to be raised in § 2255 proceeding); *cf. United States v. Milner*, 155 F.3d 697, 701 (3d Cir.1998) (where defendant's career offender status was based upon Probation Office's discovery of prior criminal history after guilty plea, government did not breach plea agreement to recommend 60-month sentence where the lowest end of Guideline range was determined to be 188 months and government recommended bottom of the range); *Meyers v. Gillis*, 142 F.3d 664, 666–70 (3d Cir.1998) (affirming grant of § 2254 habeas relief from state court sentence of mandatory life imprisonment without parole, where counsel had mistakenly advised petitioner that he would be eligible for parole); *Parry v. Rosemeyer*, 64 F.3d 110, 118–19 (3d Cir.1995) (affirming denial of § 2254 habeas relief from state court custodial sentence on revocation of probation, holding that petitioner failed to show prejudice from counsel's failure to advise of such potential collateral consequences before he entered guilty plea on original offense). *See also* district court decisions cited in note 10, *infra*.

proceeded to trial. However, any misinformation [defendant] may have received from his attorney was corrected by the trial court at the Rule 11 hearing, and thus [he] was not prejudiced.... Therefore, if the trial court properly informed [defendant] of the potential sentence he faced, he could not be prejudiced by any misinformation his counsel allegedly provided him.

*Foster,* 68 F.3d at 87–88 (internal citations and quotations omitted).

The Eighth Circuit, on the other hand, has held that such failure by the defense attorney prior to a proper Rule 11 hearing, even if it did occur, would not fall below the objective standard of reasonableness as required under the first prong of the *Strickland* test. *See Thomas v. United States,* 27 F.3d 321, 325 (8th Cir.1994) (affirming denial of § 2255 motion without hearing). Petitioner in *Thomas* was sentenced to 262 months based on career offender status. He contended that he was denied his right to effective assistance of counsel because his attorney did not advise him that under the Guidelines he could be sentenced as a career offender, which could carry a more severe sentence. *Id.* at 325. The appeals court held that the first prong of *Strickland* was not satisfied, stating:

As the district court stated in denying [defendant's] § 2255 motion, [his] "right to be apprised of the court's sentencing options is not greater than the provisions of Fed.R.Crim.P. 11(c)(1), which requires only that the court inform the defendant of the applicable mandatory minimum and maximum sentences." Our ruling in the prior appeal that the "District Court is not required to inform the defendant of the applicable guideline range" included the possibility of an enhanced sentence as a career offender. In these circumstances, the failure of [defendant's] lawyer to inform him of that possibility did not establish that the lawyer's "representation fell below an objective standard of reasonableness."

*Thomas,* 27 F.3d at 326 (citation omitted); *see also United States v. Barnes,* 83 F.3d 934, 940 (7th Cir.1996) (affirming career offender sentence for lack of deficient attorney performance or prejudice; "[A] mistaken prediction is not enough in itself to show deficient performance, even when that mistake is great, as is the case when an attorney errs about whether his client will be classified as a career offender. A gross mischaracterization of the sentencing consequences of a plea may provide a strong indication of deficient performance, but it is not proof of a deficiency.") (citations omitted).

The Ninth Circuit rule is that such failure by counsel to advise of possible career offender enhancement does satisfy the first prong of *Strickland,* and that petitioner is not automatically foreclosed from demonstrating "prejudice" under the second prong, even if the Rule 11 hearing was properly conducted. This position was established in two simultaneous decisions by that Circuit involving the same petitioner, whose appeal from denial of his § 2255 motion was decided in one reported and one unreported opinion. *See Risher v. United States,* 992 F.2d 982 (9th Cir.1993) (reversing denial of § 2255 motion); and *Risher v. United States,* 993 F.2d 884, 1993 WL 147293 (9th Cir. May 7, 1993) (unreported opinion). Petitioner in that case had entered his guilty plea at a time when the constitutionality of the Guidelines was pending decision in the Supreme Court. His sentencing was conducted under the Guidelines after they had been ruled constitutional, and his sentence was based on career offender enhancement. 992 F.2d at 983. The Ninth Circuit, in the unreported opinion, rejected his contention that his plea was invalid under due process because the district court did not inform him of his possible career offender exposure at the plea hearing, where he did not assert that the district court failed to advise of the statutory minimum and maximum sentence. 1993 WL 147293, at *1. However, in the reported decision the court ruled that petitioner did state a claim of ineffective assistance under both prongs of *Strickland,* and remanded the case for an

evidentiary hearing. 992 F.2d at 983–84. That holding and reasoning were stated in pertinent part as follows:

> We reverse and remand to the district court for a determination whether [defendant's] counsel failed to advise him of the potential applicability of the career offender provisions of the Guidelines, and, if that failure is established, for a determination whether it was prejudicial.
>
> . . . .
>
> [Defendant] claims, and we so hold, that his counsel's failure to warn him before he entered his guilty plea of the risk he might be sentenced under the Guidelines fell below the level of professional competence required by *Strickland* . . . .
>
> We hold that under these circumstances, a competent lawyer would have warned [him] of the significant risk that he would be sentenced under the career offender provisions of the Guidelines. A lawyer who failed to so advise his client cannot be said to have been functioning as counsel within the meaning of the Sixth Amendment.
>
> If [defendant] demonstrates that his counsel failed to advise him as required, he must also demonstrate that he was prejudiced by his counsel's deficient performance by showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Whether [defendant] can show that the advice of effective counsel would have caused him to reject the plea bargain is a highly fact specific question,

best considered in the first instance by the district court.

*Id.*

If we were called upon to predict whether our Court of Appeals would adopt any of these three views, we believe that it might be persuaded by the Ninth Circuit approach. That conclusion is prompted by the strong position the Third Circuit articulated in *Day* to the effect that the career offender provisions of the Guidelines must be included in the attorney-client advice at the plea negotiation stage if those provisions potentially apply to the client. *See Day,* 969 F.2d at 46. The Eighth Circuit view appears to directly conflict with *Day* in that respect. *Compare id. with Thomas,* 27 F.3d at 326.[12] The Fourth Circuit view, while acknowledging that such failure by counsel could fall below the *Strickland* standard of attorney performance, nevertheless effectively bars § 2255 relief in such circumstances if the trial court at the Rule 11 colloquy informed the defendant of the potential sentence he faced. *See Foster,* 68 F.3d at 87–88. The Fourth Circuit view thus essentially applies, in the career offender context, the general rule applicable in most § 2255 challenges to the effectiveness of counsel in predicting Guidelines sentencing ranges. In contrast, the Ninth Circuit view appears to carve out an exception for advice concerning the career offender provisions. We are concerned, however, that it would be difficult to envision where the appropriate line would be drawn in considering the recognition of other such "exceptions" if the Ninth Circuit view were to prevail, due to the variety and complexity of many Guidelines sections.

---

12. We note that at least two of our brethren in the district courts within the Third Circuit have followed the reasoning of the Eighth Circuit in *Thomas,* holding that alleged failure of defense counsel to advise of the significant possibility of career offender status would not meet the first prong deficiency standard under *Strickland. See Nwachia v. United States,* 891 F.Supp. 189, 196–99 (D.N.J.1995) (Barry, J.) (holding in § 2255 action that first prong of *Strickland* was not met by claim that de-

fense counsel erroneously estimated likely sentence and failed to inform defendant that he might be classified as career offender) (relying on *Thomas,* 27 F.3d at 321 and also citing *Figueroa v. United States,* No. 91–1047, 1993 WL 88213, at *5–9 (S.D.N.Y. March 24, 1993)); *United States v. Reyes,*—F. Supp.2d -, 1999 WL 239099, at *4 (E.D.Pa. Mar.26, 1999) (Van Antwerpen, J.) (following *Nwachia* on similar facts, in denying motion to withdraw guilty plea).

We need not resolve this legal issue in the instant case, because our review of the record conclusively demonstrates that petitioner's allegations that his counsel advised that he could only get ten years if he pled guilty, and failed to advise that he could get career offender status, are patently frivolous.

The plea agreement letter and the Rule 11 form, both of which petitioner signed and testified under oath that he had read, each stated that the violation charged in Count One of the Indictment carried a statutory mandatory *minimum* of ten years imprisonment, and a maximum of life; in addition, he was orally advised of that by this Court at the plea hearing. (*See* Pet.App. at 14; Supp. Ans. Ex. 2.) No reasonable person could possibly understand those words to mean that the *maximum* sentence for that offense, even on a plea bargain, could be ten years.

Turning to the subject of the career offender exposure, we observe that the stipulations which were part of the plea agreement letter expressly stated that the applicable base level would be 34, "unless the defendant is determined to be a Career Offender under Sentencing Guideline § 4B1.1." (Supp.Ans.Ex. 2.) This was an unambiguous reference to this defendant, and to the possibility of a higher sentence than otherwise applicable if he qualified for career offender status.

It is also apparent from the record that the possibility, indeed the likelihood, of career offender status was evident from the outset of the criminal case in this court. The Pretrial Services Report ("PTR"), which set forth a list of defendant's then-known prior convictions, indi-cated at least three potentially qualifying convictions, two for drug possession with intent to distribute and one for aggravated assault with a gun. That report further stated that "criminal record checks revealed that this defendant uses alternate social security numbers, an alternate date of birth, and an alias of Sergio Gioquinto." (PTR dated 8–1–94 at 2–3.) As required by statute, a copy of the PTR was provided to government and defense counsel for use in pretrial proceedings in the criminal case. *See* 18 U.S.C. § 3153(c)(1).

These records, taken together with petitioner's sworn testimony at the plea hearing to the effect that he had read and signed the plea agreement after discussing his case thoroughly with his attorney, (Pet. App. at 7–15), clearly show the following facts: (1) counsel for defendant was aware from the outset of the case that defendant had an extensive record which could not be definitively identified unless and until a formal Presentence Investigation Report was prepared; (2) counsel for defendant negotiated stipulations pertaining to Guideline calculations which expressly stated an awareness of potential career offender enhancement; and (3) defendant was on written notice of his possible career offender enhancement, and had ample opportunity to discuss it with his attorney prior to entering his guilty plea. Based upon these facts we therefore determine that the allegations that his attorney failed to inform him that his sentence could exceed ten years and could be enhanced if he were to qualify for career offender status are flatly refuted by the record in his criminal case. For the same reason, we find that no evidentiary hearing is necessary on this claim.[13]

13. In our view the instant case does not fall within that narrow category of situations in which it has been held that an evidentiary hearing was necessary in a § 2255 challenge to a guilty plea. *See Fontaine v. United States,* 411 U.S. 213, 214–15, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973) (petitioner claimed involuntary waiver of counsel and coerced plea, giving detailed factual allegations of coercive police tactics and mental and physical illness); *Machibroda v. United States,* 368 U.S. 487, 489–97, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962) (hearing required on petitioner's specific and detailed allegations that prosecutor had made *ex parte* promises to him and told him not to tell his own counsel); *compare Nahodil,* 36 F.3d at 326–27 (petitioner alleged that counsel advised him to plead guilty despite his repeated objections to doing so, the record of the plea hearing substantiated that he had been reluctant, and he had promptly moved to withdraw the plea prior to sentencing); *United States v. Ackerman,* 619 F.2d 285, 287–88 (3d Cir.1980) (hearing required to de-

## III. CONCLUSION

We find that petitioner has not met his burden of proof on either of his claims under 28 U.S.C. § 2255. Based upon our review of the record, we hold that he was not deprived of effective assistance of counsel with respect to the downward departure motion made on his behalf at sentencing, nor with respect to his potential career offender status during the plea negotiation phase of the case. Accordingly, the motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be denied.

No certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c); *cf.* Fed. R.App. P. 22; Local App. R. 22.2. A certificate of appealability is issued only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, petitioner has failed to make such a showing here.

termine whether letters allegedly sent to petitioner by his defense counsel were in fact sent, and whether counsel was justified in failing to timely file Rule 35 motion to correct or reduce sentence); *Marzgliano,* 588 F.2d at 397–99 (petitioner submitted affidavits indicating that his defense counsel may have led him to believe that counsel had a special relationship with district judge and had "fixed" what the sentence would be); *United States v. Valenciano,* 495 F.2d 585, 586–88 (3d Cir.1974) (hearing required where no written plea agreement was entered into, and petitioner claimed that his counsel had told him of the terms of an alleged oral agreement with the government in order to induce him to plead guilty); *Moorhead v. United States,* 456 F.2d 992, 995–96 (3d Cir.1972) (petitioner alleged misrepresentation by defense counsel as to a "proposition" by the government for a light sentence) *with Masciola,* 469 F.2d at 1059 ("When the pleading proceedings record shows clearly that defendant was questioned as to the voluntariness of his plea [and defendant acknowledged his awareness of the maximum available sentence], there is no need for an evidentiary hearing ... when the only claim is that counsel inaccurately predicted the sentence."); *see also Blackledge v. Allison,* 431 U.S. 63, 71–77, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) (summary dismissal of § 2254 petition improper where petitioner made specific factual allegations concerning unkept oral plea agreement at a time before plea bargaining was accepted as legitimate, and there was no verbatim record of state court plea or sentencing hearing); *Lesko v. Lehman,* 925 F.2d 1527, 1537–41 (3d Cir.), *cert. denied,* 502 U.S. 898, 112 S.Ct. 273, 116 L.Ed.2d 226 (1991) (discussing evidentiary hearing issue under 28 U.S.C. § 2254; collecting cases under both § 2254 and § 2255); *Zilich v. Reid,* 36 F.3d 317, 320–23 (3d Cir. 1994) (same).